[Civ. No. 1366.   Third Appellate District.—October 1, 1915.]

GEORGE E. McFADDEN, Appellant, v. N. L. BORDEN, County Treasurer of Madera County, Respondent.

Counties—Re-Classification—Taking of Federal Census—Construction of Code.—Under the amendment of 1909 to section 4007 of the Political Code (Stats. 1909, p. 460) the legislature intended to and did destroy whatever force and effect said section as enacted in 1907 possessed in the matter of a re-classification by operation of law of the counties of the state following the taking of a federal census, and there can now be no such re-classification except by an affirmative and direct act of the legislature itself.

Id.—Compensation of County Officers—Taking of Federal Census. The taking of such a census has not the effect of automatically changing the compensation of the officers of the counties of the state according to the population of the counties as ascertained by such census, as the *quantum* of compensation to which such officers are entitled is determined wholly by and upon the classification of counties for that purpose as required by the constitution.

Id.—County Assessor—Allowance of Deputy — Inapplicability to Incumbent.—The amendment of 1911 to section 4271 of the Political Code (Stats. 1911, p. 886) fixing the salary of the assessor of counties of the forty-second class at twenty-five hundred dollars per annum, and allowing him a deputy at a salary of one hundred dollars per month for six months of the year, is inapplicable to the incumbent of such office at the time of the passage of the amendment, notwithstanding said amendment provided that it should take effect and be in force immediately upon its passage, as prior to such amendment, such officer, while allowed the same salary, was not allowed any deputy.

Id.—County Officer—Increase of Compensation During Term.—An act allowing a deputy to a county officer, passed during the term for which such officer has been elected, in cases where he was entitled to none at the beginning of the term for which he was elected, and where such officer, at the beginning of his term, was allowed a lump sum, which was to include his compensation and all the expenses required to conduct the office, is violative of article XI, section 9, of the constitution, as involving an increase by indirect means of his compensation during the term for which he was elected.

APPEAL from a judgment of the Superior Court of Madera County.   W. M. Conley, Judge.

The facts are stated in the opinion of the court.

J. B. Curtin, for Appellant.

Stanley Murray, District Attorney, for Respondent.

HART, J.—The plaintiff, alleging that he is and at all times during the year 1913 has been the duly qualified and acting deputy assessor of Madera County, complains that, on the seventh day of July, 1913, he presented to the defendant, who was at all times during said year treasurer of said county, a warrant in due form for the sum of one hundred dollars, issued and signed by the auditor of Madera County, for the payment of the monthly salary of the plaintiff as such deputy assessor for the month of June, 1913, and that said treasurer refused to pay said warrant on the alleged ground that such payment "was not and is not authorized by the constitution and laws of the state of California."

The plaintiff petitioned the court below for a writ of mandate to compel the defendant as treasurer of Madera County to pay said warrant. The court granted an alternative writ, and upon the hearing of the case rendered and entered its judgment dismissing said writ or the order to show cause.

This appeal is prosecuted by the plaintiff from said judgment.

By an act of the legislature of 1909 entitled "An act to amend section 4006 of the Political Code of the state of California relating to the classification of counties and creating a new class to be known as the thirty-sixth class," it is provided that "counties having a population of 6250 and under 6500 shall belong to and be known as counties of the forty-fourth class." (Stats. 1909, p. 533.)

By the same act (p. 533) it is provided that "counties having a population of eight thousand and under eight thousand seven hundred and fifty shall belong to and be known as counties of the forty-first class." At the same session, the legislature amended section 4270 of the Political Code, which prescribes the compensation for officers of counties of the forty-first class, and subdivision 7 of said section, relating to the office of county assessor, provides that "the said assessor may appoint one deputy assessor, which said office of deputy assessor is hereby created, who shall serve as such only during the months of March, April, May and June of each year. Said deputy assessor shall receive a salary of one hundred

dollars per month, payable during the period of such service, at the same time and in the same manner as the salary of county officers is paid.'' (Stats. 1909, p. 740.)

In the year 1909, the legislature, at its regular session, ascertained and determined the population of Madera County to be 6,364, and by act so declared. (Stats. 1909, p. 557.) Thus Madera County was placed in the forty-fourth class, where it remained, so far as any affirmative act of classification by the legislature was concerned, until the session of the legislature of 1911, when, upon a re-classification of counties, it was placed in counties of the forty-second class. (Stats. 1911, p. 101.)

The term during which the plaintiff alleges that he acted and performed services as deputy assessor of Madera County began with the first Monday after the first Tuesday of the month of January, 1911, his principal or the assessor himself having been elected to the office of assessor of said county at the general election held throughout the state in the month of November, 1910.

On April 15, 1910, nearly seven months prior to the date of the election of the assessor, as above stated, the federal census, which is taken every ten years, was completed and officially declared, and it therefrom appeared that Madera County then had a population of 8,368, which, under the classification of counties as established by the legislature of 1909 (Stats. 1909, p. 533), would place said county in the forty-first class.

The plaintiff urges two points upon which he claims the right to the relief prayed for in his complaint. The first point involves the contention that, inasmuch as the assessor of Madera County was elected after it was determined by the federal census in 1910 that said county contained a population of 8,368, thus advancing it to a county of the forty-first class under the then existing classification of counties, said officer was entitled to the services of the deputy provided for by the act of 1909 (p. 533), for assessors of counties of the latter class.

The legislature of 1907 (Stats. 1907, p. 360) enacted section 4007 of the Political Code, which read as follows: ''Whenever a new federal census is taken, the counties on the first day of July following the session of the legislature next

thereafter, are, by operation of law, classified under such census.''

Under said section, obviously, upon the taking of a federal census and at the time specified therein, counties automatically shifted from those several classes in which they had been placed by express legislative mandate into other classes, according to the changes which such census showed had taken place in the population of the counties. In other words, under said section as it then read, a re-classification of the counties by operation of law would follow the taking of a federal census. And, assuming that a classification or reclassification of counties thus accomplished would in no way trench upon the provisions of section 5 of article XI of the constitution, which appears to require the legislature itself by affirmative action to classify counties for the purpose of fixing the compensation of county officers, if said section 4007 as enacted in 1907 was still the law, it is clearly manifest that the position maintained by the plaintiff would be sound and, indeed, impregnable. The legislature of 1909, however, amended said section so that it now provides: ''Whenever a new federal census is taken, the counties are not by operation of law reclassified under such census, but shall remain in the old classification until reclassified by the legislature.'' (Stats. 1909, p. 460.)

It is as plain as any proposition can be made to appear that by the foregoing amendment the legislature intended to and did destroy whatever force and effect said section as enacted in 1907 possessed, and that there can now be no re-classification of counties except by an affirmative and direct act of the legislature itself. The result is that the federal census taken in April, 1910, did not have the effect of transferring the county of Madera to the forty-first class, but that, notwithstanding such census, said county still remained in the forty-fourth class, to which it was assigned by the legislature of 1909, until the reclassification of 1911.

But it is argued that, conceding that the classification of 1909 remained in force after the federal census of April, 1910, was taken, the effect of the taking of such census was, nevertheless, automatically to change the salaries of county officers so that they would correspond with the population of the several counties as ascertained by said census. In other words, the contention is that the effect of the amendment of

section 4007 of the Political Code by the legislature of 1909, as above indicated, was, to use counsel's language, to "suspend the classification but not the salaries," and that "when a county by increased population was moved from one class to another, the salary moved with it and stayed with it until changed by legislative act." This proposition is, in our judgment, entirely destitute of merit.

As counsel for the respondent aptly and tersely puts the proposition, "classification and salaries are inseparable." In other words, the *quantum* of compensation to which county officers are entitled is determined wholly by and upon the classification of counties for that purpose as required by section 5 of article XI of the constitution. That the legislature might not, if it so elected, arbitrarily fix the compensation of such officers, without regard to the nature and extent of the services required of them but that it should regulate the same, as nearly as practicable, according to the services required to be rendered by them, as the character and the extent of such services were ascertained by it, was the obvious design of the framers of the constitution when they incorporated into that instrument the provision that the legislature "shall regulate the compensation of all such (county) officers . . . and for this purpose may classify counties by population." (Const., art. XI, sec. 5.) Without such classification there could be no legal basis for regulating or fixing such compensation, for no one will gainsay the proposition that the mode of regulating the compensation of county officers as pointed out by said provision of the constitution may not be varied from or a different mode substituted in lieu thereof. But if, as the learned counsel for the plaintiff seems to be willing to concede, the old classification remains in force and the effect of the taking and completion of the census is, *ipso facto*, to change the compensation of the officers according to the population of the counties as ascertained by such census, why reclassify at all, so long as the population remains the same as ascertained by such census?

But the constitution contemplates no such situation. Under its provisions, it is plainly the duty of the legislature to classify the counties for the purpose of fixing the compensation of their officers and, as nearly as may be, equitably adjusting it to the amount of services to be by them performed. It follows that the compensation allowed to such

officers can be determined only by the class to which they belong under the classification established by the legislature in pursuance of the terms of the constitution, and that so long as a classification once made by the legislature stands undisturbed, so long will the compensation of county officers remain as regulated thereunder, notwithstanding that there may be an actual increase or decrease in the population of the several counties shown by the taking of a federal or other census after such classification has been established.

The plaintiff secondly contends that he is entitled to prevail in this proceeding by reason of certain amendments of the so-called county government act by the legislature of 1911.

The legislature, at its regular session of that year, ascertained and determined and declared that Madera County had a population of 8,368 (Stats. 1911, p. 98), and by the same act made a re-classification whereby said county was placed in the forty-second class (Stats. 1911, p. 101), and subsequently and at the same session passed an act amendatory of section 4271 of the Political Code, fixing the compensation of the officers of counties of the forty-second class, subdivision 7 of which amendment reads as follows:

"The assessor twenty-five hundred dollars per annum; provided, that in counties of this class there shall be one deputy assessor, who shall be appointed by the assessor of said county and who shall hold office from twelve o'clock meridian of the first Monday of January of each year up to twelve o'clock meridian of the first Monday in July of each year. The salary of said deputy assessor herein provided for is hereby fixed at the sum of one hundred dollars per month during which months he shall hold office as herein provided, which said salary shall be paid by said county at the same time and in the same manner and out of the same fund as is the salary of the assessor." (Stats. 1911, p. 886.)

The said act also provides: "This act shall take effect and be in force immediately," and the contention is that, although passed during the term for which the assessor of Madera County had been elected in November, 1910, the intention of the legislature, as evidenced by the last quoted provision, was that the said assessor was entitled to reap the benefit of subdivision 7 of the said section 4271 as amended, and so appoint a deputy to serve for the period and the compensation therein specified and prescribed.

The contention cannot be sustained.

While it is no doubt true that the act referred to was to take effect and be in force immediately upon its passage in the sense that it then was to become an existing law, it certainly was not intended that its provisions should operate in favor of the then incumbents of offices of counties of the forty-second class in any case where it was manifest that by so operating it would have the effect of increasing the compensation of such officers (Const., art. XI, sec. 9), and it is obvious that the application of the amendment to the assessor elected as such in November, 1910, would have that effect.

The act of 1909, which fixed the compensation of the officers of counties of the forty-fourth class, to which, as seen, Madera County then belonged, and which was the existing law as to compensation of officers of counties of said class when the assessor of whom the plaintiff purports to have acted as deputy was elected, contained the following provision: "In counties of the forty-fourth class, the county officers shall receive, as compensation for the services required of them by law or by virtue of their offices, the following salaries: . . . The assessor twenty-five hundred dollars per annum." As shown, there was by said act no provision made for a deputy or other assistant to said officer, and clearly it was contemplated and, indeed, intended by the legislature that the person elected to the office of assessor of said county while said act existed should himself perform all the duties belonging or appertaining to that office for the compensation therein prescribed.

That an act allowing a deputy to a county officer and passed during the term for which such officer has been elected, in cases where he was entitled to none at the beginning of the term for which he was elected, and where such officer, at the beginning of his term, was allowed a lump sum, which was to include his compensation and all the expenses required to conduct his office, is violative of article XI, section 9 of the constitution, as involving an increase by indirect means of his compensation during the term for which he was elected, is thoroughly settled by the cases. (*Dougherty* v. *Austin,* 94 Cal. 603, [16 L. R. A. 161, 28 Pac. 834, 29 Pac. 1092]; *Welsh* v. *Bramlet,* 98 Cal. 219, [33 Pac. 66]; *Humiston* v. *Shaffer,* 145 Cal. 195, [78 Pac. 651]; *Hanson* v. *Underhill,* 12 Cal. App. 546, [107 Pac. 1016]; *Applestill* v. *Gary,* 18 Cal. App. 387, [123 Pac. 228]; *Elder* v. *Garey,* 19 Cal. App. 776, [127

Pac. 826]; *County of Calaveras* v. *Poe,* 167 Cal. 519, 521, [140 Pac. 23].)

In the Poe case, which is, so far as we are advised, the latest expression of the supreme court upon the subject, Mr. Justice Melvin, speaking for the court, says that "where the statute provides a fixed salary for an officer and fixed salaries for deputies, all payable out of the county treasury, a subsequent law increasing the compensation of the deputies or their number will take effect at once" (*Tulare Co.* v. *May,* 118 Cal. 304, [50 Pac. 427]; *Newman* v. *Lester,* 11 Cal. App. 577, [105 Pac. 785]), but that where, as in the case of the assessor here, "at the beginning of an officer's term the statute allows him a gross sum to cover his compenation and all the expenses of his office, such emolument may not be directly increased by statute allowing a larger sum nor indirectly by the creation of the office of a deputy to be paid by the county."

Nothing more need be said upon this branch of the discussion herein.

The judgment is affirmed.

Chipman, P. J., and Ellison, J., *pro tem.,* concurred.