S. C. Field, Appellee, v. Agnes Samuelson, State Superintendent of Public Instruction, Appellant.

No. 40505.

December 13, 1930.

Rehearing Denied June 20, 1931.

John Fletcher, Earl F. Wisdom, for appellant.

Coyle & Coyle and Hallagan, Fountain & Stewart, for appellee.

EVANS, J.—The question presented involves the construction of Section 4302 of our Code and nothing more.

The plaintiff filed with the defendant, as Superintendent of Public Instruction, a transcript of the proceedings before the County Superintendent and these have been incorporated in this record.

It is made to appear that the plaintiff is a resident of the Independent School District of Rutland in the County of Humboldt, and that he resides upon its border-line nearly two miles distant from the school house. He has two little girls five years of age. Across the road from the plaintiff's residence, and in the Maple Grove School District, is a one-room school house, 150 feet distant from the plaintiff's home. The plaintiff sought the privilege of sending his little girls to the Maple Grove School at the expense of the Independent School District of Rutland, pursuant to Section 4274, which provides as follows:

"4274. *Attending school in another corporation—Payment.* A child residing in one corporation may attend school in another in the same or adjoining county if the two boards so agree. In case no such agreement is made, the county superintendent of the county in which the child resides and the board of such adjoining corporation may consent to such attendance, if the child resides nearer a schoolhouse in the adjoining corporation and one and one-half miles or more from any public school in the corporation of his residence. Before granting such consent the county superintendent shall give notice to the board where the child resides and hear objections, if any. In case such consent is given, the board of the district of the child's residence shall be notified thereof in writing, and shall pay to the other district the average tuition per week for the school or room thereof in which such child attends. If payment is refused or neglected, the board of the creditor corporation shall file an account thereof certified by its president with the auditor of the county of the child's residence, who shall, at the time of the making of the next semiannual apportionment, deduct the amount from the sum apportioned to the debtor district, and cause it to be paid to the corporation entitled thereto."

The Maple Grove School indicated its consent, subject to the payment of a tuition of $144.00. The Independent School

District of Rutland refused its consent to the payment of such tuition. The plaintiff thereupon sought the alternative consent of the County Superintendent. The result of the application was the refusal of the County Superintendent to give the consent prayed for.

From such refusal of the County Superintendent to give his consent, the plaintiff purported to appeal to the State Superintendent of Public Instruction. The statutory authority relied on in support of such appeal is Section 4302, which provides as follows:

"4302. *Appeal to state superintendent.* An appeal may be taken from the decision of the county superintendent to the superintendent of public instruction in the same manner as provided in this chapter for taking appeals from the board of a school corporation to the county superintendent, as nearly as applicable, except that thirty days' notice of the appeal shall be given by the appellant to the county superintendent, and also to the adverse party. The decision when made shall be final."

The defendant, as the present incumbent of the office, and in obedience to the construction put upon that section by the Department during the last forty years, held that the statute in question was not applicable to plaintiff's case. The statute has not hitherto received any construction by this court. This section is comprised in Chapter 219 of the Code. The caption of this chapter is stated therein as follows: "Appeal from Decisions of Boards of Directors". The chapter is very brief and contains six sections,—being Sections 4298 to 4303 inclusive. Section 4298 is as follows:

"4298. *Appeal to county superintendent.* Any person aggrieved by any decision or order of the board of directors of any school corporation in a matter of law or fact may, within thirty days after the rendition of such decision or the making of such order, appeal therefrom to the county superintendent of the proper county; the basis of the proceedings shall be an affidavit filed with the county superintendent by the party aggrieved within the time for taking the appeal, which affidavit shall set forth any error complained of in a plain and concise manner."

Sections 4299 and 4300 provide the appellate procedure in the appeal from the decision of the board of directors to the county superintendent. Section 4301 confers power upon the county superintendent to subpoena witnesses; and likewise power to make findings of fact and directs that ''he shall enter such findings in the record''. Then follows Section 4302 above quoted. Section 4303 withholds power both from the county superintendent and from the state superintendent, to enter a money judgment. Such is the full scope of Chapter 219. It is confined in terms to appeals taken in the first instance from an order of the board of directors. Such an order is rendered appealable first to the county superintendent and from him to the state superintendent. This is not a case of that kind. The attitude of the school board of the Independent School District of Rutland, was not appealable to the County Superintendent. Manifestly for the same reason the attitude of the County Superintendent was not appealable to the State Superintendent. Chapter 206 is devoted to the subject: ''County Superintendent''. His many duties are detailed therein. No provision is made in any section thereof for an appeal from the County Superintendent to the State Superintendent, nor is there any provision in any other statute for an appeal to the State Superintendent from any original order or action of the County Superintendent in the performance of his statutory duties. The right of appeal to the State Superintendent is confined strictly to those decisions or orders that originate with the board of directors. It was the manifest legislative intention to limit to a small compass the *quasi* judicial power of such office. No practical reason is apparent why such office should be converted into a judicial tribunal. The exercise of judicial power could only duplicate the activities and functions of the courts; and this would be quite foreign to the larger educational purpose of the Department.

It is earnestly urged by the appellee that unless we hold Section 4302 to be applicable to his case, then he is without a remedy; that a right of remedy for every wrong is fundamental to our jurisprudence and that therefore a remedy by appeal *ought* to have been provided, and for that reason should be deemed to be provided by this section. As applied to this case the argument has its defects. If the plaintiff is entitled to an im-

provised remedy to redress a wrong inflicted upon him, then it is the function of the court to apply such rule. The plaintiff's grievance, if any, is that he has been deprived of some statutory right conferred upon him by Section 4274. The offending party, if any, is the County Superintendent of Humboldt County. If the plaintiff is entitled to an improvised remedy, he is entitled to it as against him. Why should we address a mandate to the State Superintendent? True, she is higher up in the official scale, but the real offender, if any, is closer to us. Why climb a tree when the opossum is on the ground? If the plaintiff is entitled to redress, as claimed, a mandate to the State Superintendent would be quite inadequate as a remedy. We could not thereby control her decision. If she were to affirm the action of the County Superintendent, the plaintiff would still be without redress.

This is perhaps a sufficient defense of the state of legislation on the subject. The fact that no provision is made for an appeal to the State Superintendent, in such a case as this, furnishes no basis of complaint to the plaintiff.

So far as Section 4302 is concerned, we hold that the construction long adopted by the Department of Education is the correct one.

The judgment of the district court is accordingly reversed.

STEVENS, DE GRAFF, KINDIG, and GRIMM, JJ., concur.

MORLING, C. J., and FAVILLE, ALBERT, and WAGNER, JJ., dissent.

MORLING, C. J., (dissenting).—It is to be confessed at the outset that the presently existing school laws are a hodge podge rather than a systematic evolution and development. Amendments and additions have been frequently made without reference to their effect upon co-ordinate or related statutes. From the beginning, however, there has been established and recognized a definite policy of general and reasonably uniform system of public education throughout the State. The right of the child to an education, and the duty of the State to furnish it, are not committed to localities or left to local control subject to local factionalism, prejudice or penuriousness. By the Constitution of the State "The board of education shall provide for the education of all the youths of the State, through a sys-

tem of common schools * * *'' Article 9, Section 12. By the Code of 1851 and the laws included in the Revision of 1860 the power, authority and discretion of the local boards were quite limited. In 1858 an act was passed "to provide a system of common schools." It was amended by an act taking effect March 1, 1860, (Revision, 1860, Section 2022 *et seq.*) These acts provided for a county superintendent of common schools whose duties were principally to examine and grant certificates to teachers, to revoke them and to "serve as the organ of communication between the secretary (of the board of education) and township or district authorities." Revision, 1860, Sections 2066 to 2073. The first provision for appeals seems to have been that made by the act of December 24, 1859, permitting any person aggrieved by any decision of the district board of directors in matter of law or of fact to appeal to the county superintendent. Revision, 1860, Section 2133. This act provided: "An appeal may be taken from the decision of the county superintendent to the secretary of the board of education, in the same manner as provided in this act for taking appeals from the decision of the district board to the county superintendent, as nearly as applicable, except * * *'' Section 2139. It may be that at the time of the passage of this act the county superintendent had no authority which would furnish any one with a grievance other than the authority to entertain and act on appeals granted by that statute, and that the statute then would be inapplicable to any case except to a decision of the county superintendent on appeal from the district board of directors and that consequently there would be no other occasion for appeal from the county superintendent to the secretary of the board of education. By Chapter 52, Laws 10th G. A., approved March 19, 1864, the board of education was abolished. The secretary of the board of education went with the board. That act provided for a superintendent of public instruction. By Section 5 he was charged with the general supervision of all the county superintendents and all the common schools of the State, and required to "determine all cases appealed from the decision of the county superintendents." Here was the establishment of a new office charged with general supervision of all county superintendents and with the duty of determining "all cases appealed from the decision of the county superintendents."

How was his supervision to be exercised? Authority to appeal to him was recognized and the duty to determine "all cases appealed from the county superintendents" enjoined. No limitation upon appeals was provided. This act was amended by Chapter 162, 12th G. A., Section 2, which provided that the superintendent of public instruction "shall be charged with the general supervision of all the county superintendents and all the common schools of the State. * * * He * * * shall determine all cases appealed from the decision of county superintendents." By the Code of 1873, Section 1577, these provisions in the act of the Twelfth G. A. were re-enacted as were Sections 2133 to 2140 of the Revision. The latter sections formed a separate chapter of the Code of 1873 and must be construed in connection with the intermediate legislation providing for superintendent of public instruction and imposing on him the duty of determining "all cases appealed from the decision of county superintendents." Between 1873 and 1897 many laws affecting the duties of State and county superintendents and boards of directors were enacted. These laws were codified by the enactment of the Code of 1897. Section 2740 required that "the county superintendent shall see that all provisions of the school law, so far as it relates to the schools or school officers within his county, are observed and enforced, specially * * *" By Section 2791 it was provided where by reason of natural obstacles any portion of the inhabitants of any school corporation in the opinion of the county superintendent could not with reasonable facility attend school in their own corporation "he shall, by a written order, in duplicate, attach the part thus affected to an adjoining school corporation, the board of the same consenting thereto * * *" The board of the district of the residence of the pupil was given no discretion as it formerly was. (Code, 1873, Section 1707; Independent District v. Independent District, 62 Iowa 616.) By Section 2803 a child residing in one corporation might attend in another if the two boards so agreed. If no agreement was made the county superintendent and the board of the adjoining corporation might consent if the child resided nearer a school house in the adjoining corporation and one and one-half miles or more from any public school in the corporation of his residence. The county superintendent was required to give notice and hear objections. The board of the

district of residence was required to pay tuition. The former provisions relating to appeals were no longer made the subject of a separate chapter. The language of Section 2820 is general:

"An appeal may be taken from the decision of the county superintendent to the superintendent of public instruction in the same manner as provided in this chapter for taking appeals from the board of a school corporation to the county superintendent, as nearly as applicable, except * * *".

By Section 2623 the State superintendent was still required to "determine all cases brought before him on appeal from the decisions of the county superintendents." These sections must be construed together and in harmony with the policy of the law. The duties of the county and state superintendents are largely administrative, partly quasi judicial. The district is compelled, in certain cases, to provide not merely its own facilities but pay for education elsewhere. The purpose of the law cannot be adequately realized if its execution depends on the discretion of the board of the residence. We do not undertake to express an opinion upon the facts. As an illustration, however, we may use plaintiff's allegations, namely, that he is a farmer and his residence is within about 150 feet of the school house of an adjoining district and over two miles from the school house of his own district; that his children of school age are two five year old girls; that his school district refuses to furnish transportation; that the highway over which his children would have to travel to the school house of his own district is a main highway between two towns on which there is much automobile traffic and which passes over a railroad track and by stock yards and which is impassable at times every winter. Among the school district's contentions are: It does not furnish transportation; to require it to pay tuition to some other district will result in a loss of money and in its not maintaining as good a school as it is now seeking to maintain; that for the good of the children and the good of both school corporations the application should be denied. The school district is an independent school district, the tuition $144, the plaintiff's tax $59.42. In this connection may be mentioned the present statute by which the county superintendent is elected by a convention composed principally of the presidents of the school boards or their rep-

resentatives. The policy of the law is uniformity in the administration of the public schools throughout the State to the end that every child shall have access to the public schools and without undue inconvenience. With these provisions to insure convenience in attendance, attendance has been made compulsory. The parent, under penalty, is compelled with certain exceptions to provide for attendance. Code Supp., 1913, Section 2823-a, *et seq.*; Code, 1927, Chapter 228. One of the exceptions to Section 2823-a, Code Supp., 1913, was in case of any child who lived more than two miles from any school where no transportation at public expense was provided. It is significant that that exception has been eliminated. Code, 1927, Section 4411. While some codifying acts are provided for the Code of 1924, Sections 2818 and 2820, Code, 1897, are still the law. Their present arrangement in the Code of 1927 is editorial and not legislative.

Admittedly if the board and the county superintendent make their respective decisions consecutively appeal to the State superintendent would lie. Here there is the decision of one of the boards and of the county superintendent, only the decisions are concurrent instead of consecutive.

Without further elaboration it seems to me that construing the present statutes as a whole Section 2820, Code, 1897, provides for an appeal by any person aggrieved in all cases from the decision of the county superintendent to the superintendent of public instruction.

I think the majority confine their attention to too small a part of the statutory law and put too narrow a construction on it without reference to the intent of the legislature, the policy of the law and the general legislation on the subject. While the one section reads "an appeal may be taken from the decision of the county superintendent" it is broad enough to include all decisions. It should be construed not merely in connection with and as limited by Section 4298 but in connection with all the statutes *in pari materia* and with the policy of the public school laws in their entirety.

This may be further illustrated by supposing that the county superintendent's decision were adverse to the residence district and it would thereby be compelled to pay tuition or cost of transportation. In harmony with the spirit, and in the execution of the purpose, of the law it would have the right to appeal.

II. The case was submitted to the lower court on motion to dismiss. This motion was in no part based upon and did not raise the question of administrative construction. I find no such general, notorious or settled construction of the statute by the department of public education as to call for the application of the rule of settled, administrative construction. See Graf v. Employers L. A. Corp., 190 Iowa 445; 23 C. J. 100. The appeal of Davis v. District Township, as found in Iowa School Laws & Decisions of 1929, Page 341, does not reach the point and falls far short of establishing the administrative construction contended for.

III. It may be that the superintendent of public instruction on taking jurisdiction would hold that no abuse of discretion on the part of the county superintendent is shown, but that does not affect the question of her duty to take jurisdiction and to pass upon the merits of the appeal. The propriety of the exercise of the discretion of the county superintendent may be determined by the state superintendent. Clay v. Independent School District, 187 Iowa 89, 100; School District v. Independent District, 149 Iowa 480, 488. I think the judgment should be affirmed.

FAVILLE, ALBERT, and WAGNER, JJ., join in this dissent.