GEORGE GALLARNO, Appellant, v. JAMES W. LONG, State Auditor, et al., Appellees.

No. 41456.

JUNE 24, 1932.

Clark, Byers, Hutchinson & Garber, for appellant.

John Fletcher, Attorney-general, Earl F. Wisdom, Assistant Attorney-general, and McNett, Kuhns & Brown, for appellees.

Fred H. Free, for J. P. Pritchard, Intervener.

KINDIG, J.—On April 3, 1929, the General Assembly of Iowa passed and approved Chapter 1, Acts of the Forty-Third General Assembly. Section 1 of this act contains the following provisions:

"Each member of the general assembly and the lieutenant governor shall be paid his actual necessary expenses incurred while in attendance at a session of the legislature, which shall in

no case exceed five hundred dollars ($500) for any regular ses-sion. Sworn itemized claims therefor shall be filed with the state board of audit and the provisions of chapter twenty-five (25) of the code shall be applicable thereto. The members of the forty-third general assembly, including the lieutenant gover-nor, shall be entitled to the benefits thereof.''

Those members of the Forty-Third General Assembly who filed claims for expenses under the above legislation have been paid, and the others who did not thus file such claims can-not now obtain the alleged expense money for that session be-cause more than six months have elapsed since ''its accrual.'' Under Section 393 of the 1931 Code:

''No claim shall be audited by the board [of audit] when such claim is presented after the lapse of six months from its accrual.''

Although the plaintiff-appellant, George Gallarno, and the intervener-appellant, J. P. Pritchard, sought to enjoin the de-fendants-appellees, James W. Long, Auditor of State, and Ray-mond E. Johnson, Treasurer of State, from paying to the Lieutenant Governor and the members of the legislature in the Forty-Third General Assembly the claims by some of them filed for the alleged expense money, the injunctive relief, because of the aforesaid payment to some and the statutory bar as against others, will not be granted, for this particular question has be-come moot. Nevertheless, the Lieutenant Governor and most members of the legislature in the Forty-Fourth General As-sembly likewise, to cover the so-called personal expenses of such officials, respectively, filed claims for personal expenditures under the provisions of chapter 1, Acts of the Forty-Third Gen-eral Assembly, above set forth. Some members of the house and senate, however, did not file claims under this legislation. Such claims which have been thus filed in the manner and way afore-said, were duly audited and by the auditors allowed. Moneys have been appropriated for the payment of the audited claims. All preliminary steps have been taken for the payment of the claims allowed to the Lieutenant Governor and the members of the Forty-Fourth General Assembly who filed them. Unless, then, the appellee, the auditor of state, is enjoined he will duly

issue a state warrant to each claimant for the claim allowed him, and, upon presentation, the appellee treasurer, unless he is restrained, will pay the same from the state funds appropriated therefor. Consequently, this action was instituted June 19, 1931, in the Polk County district court by the appellants, as taxpayers of Iowa, to enjoin the auditor of state from issuing the aforesaid warrants and the treasurer of state from paying the same.

The basis for the injunction relied upon by the appellants is the unconstitutionality of Chapter 1, Acts of the Forty-third General Assembly. This unconstitutionality arises, the appellants declare, because Chapter 1, Acts of the Forty-Third General Assembly, conflicts with, and is contrary to, Section 25, Article III, and Section 15, Article IV, of the Iowa Constitution.

After a hearing in the district court, that tribunal found the legislation aforesaid constitutional, and, on December 11, 1931, entered a judgment and decree denying the injunction. From this ruling of the district court the appellants appealed.

 Several questions are argued, but it is necessary to consider but two of them for a final determination of this case. These propositions are: First, Under the Iowa Constitution is the alleged personal expense money, allowed under Chapter 1, Acts of the Forty-Third General Assembly, expense of the proposed recipients or compensation to them? If, as hereinafter found, such allowance under the legislation is in fact compensation, then, second, may compensation be granted the Lieutenant Governor and members of the legislature under the Constitution in the manner and way outlined by Chapter 1, Acts of the Forty-Third General Assembly? By thus defining the propositions involved, it is not intended to indicate or suggest that Chapter 1, Acts of the Forty-Third General Assembly, would be constitutional if the moneys therein allowed the Lieutenant Governor and members of the legislature were for personal expenses as distinguished from compensation. That question is not considered in this discussion. Under the propositions thus outlined, it is first convenient to determine whether or not the allowance made under Chapter 1, Acts of the Forty-Third General Assembly, is compensation or a mere personal expense under the Constitution.

Section 25, Article III, of the Iowa Constitution declares:

"Each member of the first General Assembly under this Constitution, shall receive three dollars per diem while in session; and the further sum of three dollars for every twenty miles traveled, in going to and returning from the place where such session is held, by the nearest traveled route; after which they shall receive such compensation as shall be fixed by law; but no General Assembly shall have power to increase the compensation of its own members. And when convened in extra session they shall receive the same mileage and per diem compensation, as fixed by law for the regular session, and none other."

Moreover, Section 15, Article IV, of the Iowa Constitution contains the following declaration:

"* * * The Lieutenant Governor, while acting as Governor, shall receive the same pay as provided for Governor; and while presiding in the Senate, shall receive as compensation therefor, the same mileage and double the per diem pay provided for a Senator, and none other."

In response to the alleged privilege afforded by Chapter 1, Acts of the Forty-Third General Assembly, the Lieutenant Governor and certain members of the Forty-Fourth General Assembly filed with the auditor of state various and divers claims for board, room, taxicab hire, repair of automobiles, expenses incident to attending funerals, the costs of entertaining constituents, garage rent, mileage, drayage for moving household goods, and miscellaneous and estimated items. At that session of the legislature, the Lieutenant Governor and each member of the legislature, in addition to the allowance under consideration, had received: First, the mileage provided by Section 14 of the 1931 Code, to wit, five cents per mile, by the nearest traveled route; and, second, full compensation, as provided by Section 14 of the Code, supra,—that is to say, $2,000 for the Lieutenant Governor and $1,000 for each member of the legislature. So, as above indicated, the allowance contemplated by Chapter 1, Acts of the Forty-Third General Assembly, is in addition to the mileage and salary allowed by Section 14 of the Code.

Within the purview of the aforesaid constitutional provi-

sions, then, is the allowance contemplated by Chapter 1, Acts of the Forty-Third General Assembly, compensation or expense? It is argued by appellees that the allowance is expense, while, on the other hand, it is contended by the appellant that the same constitutes compensation, under the Constitution.

From this point, the theories of the arguments of the appellants and appellees become widely divergent. Appellees maintain that because the allowance contemplated by Chapter 1, Acts of the Forty-Third General Assembly, is not fixed, but determined by the actual personal expenditure of the Lieutenant Governor and each member of the General Assembly, it necessarily is a personal expense under the Constitution, as distinguished from compensation. Because such expenditure is personal to the Lieutenant Governor and each member of the General Assembly, the appellees insist that it does not rise to the degree or dignity of a compensation, but rather, the same constitutes a preliminary prerequisite which permits the recipient to receive and enjoy the actual compensation granted by the Constitution and the aforesaid legislation thereunder.

On the other hand, the appellants contend that the allowance under consideration necessarily and logically must be and is compensation under the Constitution and the legislation in question, because the same takes the place of the compensation enjoyed before this particular act was passed, and therefore in fact amounts to an additional compensation. Continuing their argument at this juncture, the appellants declare that the expenses of the Lieutenant Governor and the members of the legislature are necessarily divided into two kinds. They are: First, a legislative expense; and, second, a personal expense. Therefore, the appellants conclude that the legislature may properly allow a legislative expense in addition to the mileage and other compensation contemplated by the Constitution, but that the Constitution prohibits the legislature from granting compensation to its members for mere personal living expenses. To support their contention the appellees refer to the following cases, where expense money has been granted to the members of the legislature, or other officers: Macon County v. Williams, 224 S. W. 835 (Mo.) ; State v. Thomason, 221 S. W. 491 (Tenn.) ; State v. Raine, 31 N. E. 741 (Ohio) ; State v. Sheldon, 111 N. W. 372 (Nebr.) ; Kirkwood v. Soto, 25 Pac. 488 (Cal) ; Russ v.

Commonwealth, 60 A. 169 (Pa.); Milwaukee County v. Halsey, 136 N. W. 139 (Wis.); State v. County Commissioners, 10 Pac. 901 (Nev.); Christopherson v. Reeves, 184 N. W. 1015 (S. D.); State v. Reeves, 184 N. W. 993 (S. D.); McCoy v. Handlin, 153 N. W. 361 (S. D.). A careful study of the foregoing cases will reveal the fact that not one of them, except the South Dakota cases, is in point. With the exception of the South Dakota cases, each case above cited in fact dealt with the legislative or governmental, as distinguished from a personal, expense.

For instance, omitting the South Dakota cases, the remainder of the above citations involved stenographic expense, the expenses of a Judge going outside of the county of his residence, the cost of a Governor's mansion, traveling expenses of the legislature, and costs due to the dedication of a monument. As will soon be shown, and as already has been indicated, there is a marked distinction between legislative or governmental expenses and mere personal expenses of the legislators. Personal expenses are for the comfort and convenience of the state official or employee, while at his official residence or abode, and those expenses have nothing to do with the performance of his duty as a state official or employee. Such expenses are those incurred for room, house rent, meals, laundry, clothes, personal communications by telephone, telegraph, or letter, and other things of like character. If the legislator, other state officer, or state employee maintains a home or place of abode at the seat of government or at any other place contemplated by the nature of his office or employment, he cannot be expected by the state at his own expense to maintain a home or abode at some other place. Hence, if the state expects such officer or employee to go on state business from his official home or abode to another place or to other places, the expense of traveling there and returning therefrom, his board and lodging while on the trip, may, when properly authorized by the legislature, be charged to the state in addition to the salary or compensation of such individual. An illustration of such governmental expense may be found in the case of a district Judge who maintains his residence in one county and is required to go to another county in his district to hold court. While traveling to and from, and obtaining board and lodging in, the last-named county, such official is incurring governmental, as distinguished from a personal, expense. So,

too, a legislative expense is incurred by the legislators in the performance of their duties. These legislative expenses are the costs necessary to enable the legislature to properly perform its functions. To illustrate such legislative expense, reference is made to stationery, pencils, ink, Codes, stenographers, clerks, telephone and telegraph charges for public business, office rent for state purposes, and other items of a similar nature. Naturally, definitions of both personal and legislative expenses must be controlled by constitutional provisions. Obviously, however, under the Iowa Constitution, there are legislative and governmental expenses which are to be borne by the state rather than by the individual officer or employee. Otherwise the public office or position might be prohibitive because the officer or employee necessarily would be required, under the supposition, to bear the governmental or legislative costs above enumerated. This could not be done by the ordinary officer or employee because his compensation is not adequate. According to most, if not all, of the reported cases, legislative or governmental expenses under a state Constitution can be borne by the state.

The history of government indicates that it was not contemplated that an officer or employee should pay expenses generally known as legislative or governmental. Likewise, the same history indicates that the state may maintain a Governor's mansion for the Governor without cost to him, and in addition thereto pay that official his regular compensation. See State v. Sheldon, (111 N. W. 372), supra. This is true because the Iowa Constitution, as well as other state Constitutions and the United States Constitution, were adopted with that historical practice in mind. Of course, many Governors could not afford a Governor's mansion, nor could they bear the expense of maintaining it. Yet nations and states, through all the times of history, have provided mansions for their chief executives, and such practice was clearly contemplated by the public when the various Constitutions of the states of the union were adopted. It appeals to the pride of the people and inspires the youth of the state and nation to have a mansion for the Governor and a White House for the President. Constitutions, of course, must be construed in the light of the histories of nations and states. Halsey & Company v. City of Belle Plaine, 128 Iowa, 467; State v. Sheldon (111 N. W. 372), supra; State v. Dammann, 228 N.

W. 593 (Wis.); Russ v. Commonwealth (60 A. 169), supra. When that is done, it is quite easy to distinguish between legislative, or governmental, and personal expense . As previously said, the South Dakota cases, above cited, squarely support appellees' view to the effect that Chapter 1, Acts of the Forty-Third General Assembly, is a personal expense, as distinguished from compensation. These South Dakota cases have been carefully considered, and it is apparent that the discussion therein overlooked some of the fundamental principles in constitutional interpretation. Therefore, the South Dakota cases cannot be followed.

The great weight of authority in America, as indicated by the following cases, is to the effect that there is a distinction between legislative, or governmental, and personal expenses. In these last-named cases the authorities relied upon by appellees are carefully distinguished and the South Dakota cases repudiated. Dixon v. Shaw, 253 Pac. 500 (Okla.); State v. Turner, 233 Pac. 510 (Kans.); Jones v. Hoss, 285 Pac. 205 (Ore.); Ashton v. Ferguson, 261 S. W. 624 (Ark.); State v. Clausen, 253 Pac. 805 (Wash.); Peay v. Nolan, 7 S. W. (2nd), 815 (Tenn.). See also State v. Raine, 31 N. E. 741 (Ohio); Fergus v. Russel, 110 N. E. 887 (Ill.); In re Advisory Opinion to the Governor, 107 So. 366 (Fla.); Marioneaux v. Cutler, 91 Pac. 355 (Utah); Frizzell v. Holmes, 115 S. W. 246 (Ky.); Dougherty v. Austin, 28 Pac. 834 (Cal.); Dougherty v. Austin, 29 Pac. 1092 (Cal.); McFadden v. Borden, 152 Pac. 977 (Cal.); Hanson v. Underhill, 107 Pac. 1016 (Cal.); Conklin v. Woody, 165 Pac. 973 (Cal.); Wines v. Garrison, 214 Pac. 56 (Cal.); Higgins v. Glenn, 237 Pac. 513 (Utah); Bailey v. Kelly, 79 Pac. 735 (Kans.); Forward v. San Diego, 209 Pac. 993 (Cal.).

For the convenience of the reader, excerpts are quoted from some of the last-named cases. It was said by the Kansas Supreme Court, in State v. Turner (233 Pac. 510), supra, reading on pages 511 and 512:

"All legislative expenses may be properly paid. The expenses that may be paid are not those that are incurred by a member of the Legislature because he is at the capital city; they are those that are incurred by him in the performance of his duties. They are legislative expenses, not personal expenses.

The distinction between expenses that are legislative and those that are personal is that legislative expenses are those that are necessary to enable the legislature to properly perform its functions, while those that are personal are those that must be incurred by a member of the legislature in order to be present at the place of meeting—expenses for his personal comfort and convenience, which have nothing to do with the performance of his duty as a member of the legislature. Personal expenses are those incurred for rooms, meals, laundry, communications with their homes, and other things of like character.''

While speaking of personal expenses, analogous to those now under consideration in the case at bar, the Supreme Court of Oregon declared in Jones v. Hoss (285 Pac. 205), supra, reading on page 206:

''Such allowance for personal expenses is, in effect, additional compensation which the Constitution expressly forbids.''

Again, the Supreme Court of Arkansas stated in Ashton v. Ferguson (261 S. W. 624), supra, on page 625:

''Each house (of the legislature) may provide conveniences, such as stationery, pencils, ink, telephone and telegraph, and other things for the use of the members, and pay for the same out. of contingent expenses, but it is quite another thing to attempt to make an allowance of funds to a member to be used at will. One is the payment of a legitimate expense, and the other is an allowance placed at the disposal of the member to be used at his own discretion and will. One is a payment of necessary expenses of the house itself, and the other is an allowance to the member in spite of the provision of the Constitution to the contrary.''

So far, then, as the authorities are concerned, it is apparent that Chapter 1, Acts of the Forty-Third General Assembly, contemplates compensation, as distinguished from legislative expenses. Such expenses thus contemplated by the act under consideration are personal and not legislative. Hence they amount to additional compensation. This conclusion finds support in the history of the Iowa Constitution, the history of the times under which it was adopted, the legislation thereunder,

and the evils sought to be avoided by the Constitution. Those historical and other matters may be taken into consideration when interpreting the Constitution. Allen v. Clayton, 63 Iowa 1; State v. Dammann (228 N. W. 593), supra; Toncray v. Budge, 95 Pac. (Ida.) 26; 12 Corpus Juris, pages 712, 714, and 715; Halsey & Company v. City of Belle Plaine (128 Iowa 467), supra; State v. Sheldon (111 N. W. 372), supra; District Township v. City of Dubuque, 7 Iowa (Clarke) 262; Town of McGregor v. Baylies, 19 Iowa 43.

Under the Constitution of 1846, it was provided that the members of the legislature should receive as compensation per diem and mileage. The legislature convening after the adoption of that Constitution provided as compensation for the members of the legislature at regular session per diem and mileage. Thereafter the compensation of the members of the legislature continued as per diem and mileage for regular sessions until the adoption of the present Constitution in 1857. Before the present Constitution was adopted, however, the Fifth General Assembly met in extra session on July 2, and adjourned on July 16, 1856. But these legislators in that special session voted themselves compensation for a full session. That greatly irritated the people, as is evidenced by the constitutional debates which occurred during the discussion concerning the present Constitution. Manifestly it was the purpose of the framers of the present Constitution to avoid in the future excessive payments to legislators. For the purpose of thus safe-guarding the state treasury, Section 25 of Article III, before quoted, was adopted and submitted to the people for ratification. Accordingly, the people adopted the Constitution of 1857 containing the foregoing Section 25 in Article III. This section provides that the legislature shall receive as compensation per diem and mileage. When the legislature met after the adoption of the present Constitution they enacted laws providing compensation for its members. Such compensation under the new legislation continued to consist of per diem and mileage. During the legislative session of 1872, however, the legislature provided that each legislator in the future should receive compensation of $550 and mileage for a regular session, and in mileage and per diem for an extra session. The per diem for the extra session was to be based on the salary for the regular session.

Thus the matter remained until 1911, when the legislature increased the pay of its members per session to $1,000 and mileage, but declared that the pay for an extra session should continue to be mileage and per diem, figured on the basis of the regular session salary. Throughout the debates in the legislature in April, 1911, it was declared by the members that their pay should be increased because their personal living expenses had correspondingly become higher. Clearly it is indicated thereby that the members of the legislature themselves understood that their personal expenses were to be paid from the compensation which they received from the state. Not only did the members of this particular legislature so understand, but the members of all the legislatures so understood from 1846 down to 1911. Moreover, the members of future legislatures continued to so understand down to the Forty-Third General Assembly, when the legislation now under consideration was passed. Beyond peradventure of doubt, the framers of the present Constitution intended that the mileage and per diem provided in the Constitution was to afford the compensation from which each member of the legislature should pay his personal expenses. It is equally clear that those framers of the Constitution understood and believed that the personal expenses of the legislators were to be borne by them. Those framers of the Constitution likewise understood the distinction between legislative and personal expenses. So, too, the people who adopted the Constitution had the same understanding about these matters as did the framers thereof. Each successive legislature after the adoption of the Constitution interpreted it to mean that there was a distinction between legislative and personal expenses, until the Forty-Third General Assembly passed the act now in question. After that history and those years of uninterrupted uniform interpretation, together with the great weight of authority in the sister states, as before indicated, sound constitutional interpretation compels the conclusion that the personal expenses contemplated by Chapter 1, Acts of the Forty-Third General Assembly, are personal as distinguished from legislative expenses, and therefore amount to and are additional compensation to the legislators.

Assuming that the expense provided by the legislation now under attack is compensation, the appellees continue to

argue that the enactment nevertheless violates no constitutional prohibition. The basis for this contention is laid on the ground that the Constitution does not prohibit a given legislature from increasing the compensation to be enjoyed by future legislators. In fact, it is urged by appellees that Section 25, of Article III, contemplates and authorizes a change in compensation so far as future legislators are concerned. On the other hand, the appellants assert that when the Constitution is considered as a whole and properly interpreted, it does in fact prohibit the kind of compensation attempted to be authorized by Section 1, Acts of the Forty-Third General Assembly. Before arriving at a conclusion concerning this disputed point, it will be helpful to recognize certain principles of constitutional interpretation.

"Unless the legislature has usurped powers prohibited by * * * (the Iowa Constitution), the courts will not interfere. The unconstitutionality must plainly, clearly, and palpably appear." Loftus v. Department of Agriculture, 211 Iowa 566.

See, also, City of Des Moines v. Manhattan Oil Co., 193 Iowa 1096, and other cases therein cited.

This principle of constitutional construction is recognized at the outset. Furthermore, it must be realized that the question is not what the court may think about the policy of the legislation. There is but 'one question involved, and that relates to whether the legislation is unconstitutional. It is not for the courts to say whether the legislation violates the rules of public policy. State v. Fairmont Creamery Co., 153 Iowa 702, 708. During the discussion in the Fairmont Creamery Co. case, supra, we said on page 708:

"With the wisdom or the advisability of the legislation the courts have nothing to do. That question must be argued before the legislative tribunal."

Consequently it is apparent that the legislation may be desirable and beneficial, and yet it cannot stand if the Constitution is violated. On the other hand, the legislation may be unwise and the basis for the inauguration of a vicious public policy, yet if it violates no constitutional principle, the courts cannot interfere. Campbell v. Jackman Brothers, 140 Iowa

475. These principles are well known to students of constitutional law. State v. Executive Council, 207 Iowa 923.

In connection with the foregoing principles, it must be further understood at this time that the state Constitution is not an instrument which confers powers upon the people, but rather it prohibits the exercise of certain powers otherwise existing. McMillen v. County Judge and Treasurer of Lee County, 6 Iowa (Clarke) 391; Purczell v. Smidt, 21 Iowa 540; Campbell v. Jackman Brothers (140 Iowa 475), supra; McGuire v. C. B. & Q. Ry. Co., 131 Iowa 340; Stewart v. Board of Supervisors, 30 Iowa 1; Loftus v. Department of Agriculture (211 Iowa 566), supra.

After the Declaration of Independence, each of the thirteen colonies theoretically became a state possessing all the powers and prerogatives of any state. When the Constitution of the United States was adopted, those free and independent states assigned or transferred, so to speak, to the federal government, through the Constitution, certain powers and prerogatives. Thereby the federal government became a government of conferred powers, while the state governments remained governments of inferred or reserved powers.

"The powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people." Tenth Amendment to the Constitution of the United States.

See also Loftus v. Department of Agriculture (211 Iowa 566), supra. Following the adoption of the United States Constitution, new states coming into the union recognized the powers in the federal government and retained in their people the remaining prerogatives and rights of the states. So both the state and federal Constitutions are a limitation upon the powers of the people to legislate through the state government. Except, however, as thus limited by the two Constitutions, the people have such power to legislate and can confer it upon their state legislature. Strawberry Hill Land Corporation v. Starbuck, 97 S. E. 362 (Va.). Thus the people in Iowa conferred upon their legislature the power to enact laws, subject to the prohibitions in the state and federal Constitutions. Unless, then, Chapter 1, Acts of the Forty-Third General Assembly, is pro-

hibited by the state Constitution, this court cannot declare it unconstitutional under the issues presented in the case at bar. State v. Sheldon (111 N. W. 372), supra; Dixon v. Shaw (253 Pac. 500), supra; Peay v. Nolan (7 S. W. [2nd], 815), supra. To lay the basis for determining the question of whether the Constitution contains such prohibition is the purpose, as before said, of reciting these rules of interpretation. The aim and purpose of constitutional interpretation is to find the intention of the framers of, and the people who adopted, the instrument. Halsey & Co. v. Belle Plaine (128 Iowa 467), supra; District Township v. City of Dubuque (7 Iowa 262), supra; Town of McGregor v. Baylies (19 Iowa 43), supra. In order to ascertain such intention, the Constitution should be construed as a whole (District Township v. City of Dubuque [7 Iowa 262], supra), and use should be made of the other rules of interpretation previously discussed. With the basis for interpretation thus laid, it is now essential to determine whether the Iowa Constitution prohibits the legislation under consideration.

Appellees seriously argue that there are no words of prohibition in the Constitution against a present legislature's increasing the compensation for future legislatures. Not only that, but as before stated, the appellee insists that section 25, Article III, of the Iowa Constitution affirmatively authorizes the legislature from time to time to fix the future compensation for later legislators. A review of this section of the Constitution, however, and a comparison of it with other portions of the Constitution indicate that appellees are mistaken in their contentions. As hereinafter will be seen, the Constitution limits the compensation which any legislature may fix for its successors to mileage and per diem. No other compensation is constitutional. This view will become obvious when consideration is given to the following propositions.

In Section 25, of Article III, the Constitution provides a mileage and per diem compensation for the first legislature. Following that, in the last sentence of Section 25, the Constitution declares that the pay for legislators convened in extra session shall be "the same mileage and per diem compensation as fixed by law for the regular session, and none other." That is the language used by the framers of the Constitution to the people who adopted the instrument. Unless, then, those framers

of, and the people who adopted, the Constitution intended that the compensation fixed for a legislator in the regular session should be mileage and per diem, there would be no basis for estimating the compensation of a legislator in extra session. So firm were the framers of the Constitution in the belief that in the first part of Section 25, Article III, they had definitely and unchangeably fixed the compensation for a legislature in the regular session at mileage and per diem, that they, as before said, used that fact as a basis for determining the compensation for the legislature at an extra session of the legislature, and to fix the pay of the Lieutenant Governor and members of the Board of Education. According to Section 15 of Article IV, the Lieutenant Governor "shall receive as compensation * * * the same mileage and double the per diem pay provided for a senator, and none other." Also, under Section 13, Article IX, of the Constitution the Board of Education "shall each receive the same per diem during the time of their session, and mileage going to and returning therefrom, as members of the General Assembly." Can it be possible, then, that the framers of the Constitution did not intend the pay of the legislator in regular session to be definitely fixed as mileage and per diem? But one answer can be made to this interrogatory. It cannot be said that the framers of the Constitution said something they did not mean, or constructed a scheme of compensation which the legislature in the future could undo, make useless, and convert into a monstrosity. If the compensation for the legislature at the regular session is not thus permanently and unchangeably fixed on a per diem and mileage basis, the Constitution would become ridiculous in its operation. How can the compensation of the legislature at the extra session, the Lieutenant Governor, and the members of the Board of Education be determined if the first part of Section 25 of Article III of the Constitution did not permanently fix the compensation of a legislator at the regular session on a mileage and per diem basis? Without a mileage and per diem basis permanently fixed in the Constitution there would be no method of determining the mileage and per diem of the Lieutenant Governor, members of the Board of Education, and legislators in extra session. The whole scheme of the Constitution, therefore, contemplates and requires that the legislature in regular session receive a per diem and mileage

compensation. Otherwise the Constitution will become unworkable. So, then, the provision in Section 25, Article III, permitting future legislators to fix the compensation necessarily contains the limitation that such compensation to be fixed in the future shall be on a per diem and mileage basis. According to said Section 25 of the Constitution, no other compensation can be "fixed by law." Such compensation, then, as used in Section 25, refers to a mileage and per diem compensation, and none other. Any other interpretation of this portion of the Constitution would emasculate the instrument and make of it an unworkable and useless document. In accordance with all the rules of constitutional interpretation, that result must be avoided. Under the very necessity of the occasion, the Constitution imperatively requires compensation fixed for the legislator at the regular session shall be on the mileage and per diem basis. Therefore, such necessity and requirement for a compensation fixed upon that basis amounts to a prohibition against the legislature's fixing such compensation on any other basis.

But it is said by appellees that the legislature in 1872, and again in 1911, abandoned the per diem basis of compensation and adopted in lieu thereof fixed salaries, and because that system of compensation has been in force so long it amounts to a construction of the Constitution by the legislature and the departments of government that a per diem compensation is not essential. As before said, the legislature in 1872, and again in 1911, did change the compensation for a regular session from a per diem to a salary basis. Likewise, it may be conceded that a long-continued, uniform construction of the Constitution by administrative officers and boards is entitled to great weight with the court when interpreting that instrument. See Atwell v. Parker, 101 N. W. 946 (Minn.); Field v. Samuelson, 212 Iowa 786. A per diem, as said by Webster's New International Dictionary, means "by the day." To the same effect see 48 Corpus Juris, 807. It was said in Peay v. Nolan (7 S. W. [2nd] 815), supra, by the Tennessee Court on page 817:

"The term 'per diem' * * * (under some circumstances) is synonymous with 'salary.' "

Perhaps a salary under the Iowa Constitution may be the equivalent of a per diem. There is much indicating that this is

true. But this question is not before us for decision, and whether the salary is equivalent to the per diem compensation under the Iowa Constitution need not be, and is not, now decided.

However, for the purpose of this discussion, it may be assumed without deciding that the salary fixed by the Iowa legislature is equivalent to the per diem required by the Constitution. Nevertheless, if such salary is the equivalent of the constitutional per diem, that would not mean that the expenses provided by Chapter 1, Acts of the Forty-Third General Assembly, are likewise equivalent to a per diem. The per diem basis for compensation is fixed and definite. So, too, the salary basis for figuring such compensation is fixed and definite. Moreover, the Constitution contemplates a per diem and not the indefinite expense contemplated by Chapter 1, Acts of the Forty-Third General Assembly. When obtaining compensation under that act, one legislator receives one amount and another a different sum. Everything depends upon the personal whim of the individual legislator. Plainly the expenses contemplated by that chapter are neither fixed nor definite. Under that legislation, one legislator would receive one amount and another a different sum, as above stated. More than this, the expenses contemplated by the legislation now under consideration would furnish no basis whatever for fixing the compensation: First, of the legislator in extra session; second, of the Lieutenant Governor; and, third, of the members of the Board of Education. The salary, however, above named, does fix such criterion and is used as the basis for fixing the compensation for the legislator in extra session, the Lieutenant Governor, and the members of the Board of Education.

As before explained, the Lieutenant Governor "shall receive as compensation * * * the same mileage and double the per diem pay provided for a senator, and none other." How can the Lieutenant Governor, then, under that constitutional provision, obtain the expenses contemplated by Chapter 1, Acts of the Forty-Third General Assembly? When fixing the compensation for the Board of Education, how can compensation be given to that body on the basis of the expenses to be paid the legislature under this act? Continuing the inquiry, it may be also asked, how can the legislator in extra session receive any part of these expenses when, according to the Constitution, he is

to receive such mileage and per diem compensation as the legislator receives in extra session, and none other? Obviously, then, Chapter 1, Acts of the Forty-Third General Assembly, is not the equivalent of the per diem required by Section 25, Article III, of the Constitution. There are at least two reasons why this is so: First, this expense money is not definite and certain as is the per diem required by the Constitution; and, second, the expense money cannot be used as a basis under the scheme contemplated by the Constitution in fixing the compensation for the legislature at extra session, the Lieutenant Governor, and the members of the Board of Education. Therefore, this legislation is clearly, plainly, and palpably unconstitutional.

Furthermore, this result is supported by the express limitations placed in, and at the end of, the following sections in the Iowa Constitution: Section 25, of Article III, and Section 15, of Article IV. When fixing the compensation for the Lieutenant Governor, Section 15, Article IV, of the Constitution declares that the mileage and per diem compensation there provided shall be received by him "and none other." Likewise, in arranging the compensation for the legislator in extra session, Section 25, of Article III, provides for mileage and per diem, and then concludes with the phrase "and none other." This phrase "and none other" obviously, according to the arrangement of, and recitals in, Section 25, of Article III, limits the legislature in regular session to a compensation composed of mileage and per diem only.

By reaching this conclusion, there is to be no misunderstanding. Doubtless the members of the legislature in passing Chapter 1, Acts of the Forty-Third General Assembly, acted in the best of faith. Perhaps it was their desire, when increasing their compensation, to save the state of Iowa such part of the $500 allotted to each member for expenses as was not actually used by him. This, if true, was a worthy motive, but worthy as it is, the Constitution nevertheless has been violated. According to the Constitution, such compensation must be figured on a per diem basis.

Again attention is called to the fact that it is not for the court to determine the constitutionality of an act because of its desirability, worthiness, or good results. The only question confronting the court is whether the legislation violates the

Constitution. If it does, the act is wrong simply because it does contravene the Constitution. It is not necessary to explain to the citizens of a state enjoying the benefits of a constitutional government why the Constitution must be upheld. Because the Constitution is such, furnishes reason enough why this court must uphold it.

For the reasons above set forth, therefore, the judgment and decree of the district court must be, and hereby is, reversed.—Reversed.

All justices concur.

EVANS, J., specially concurs.

EVANS, J. (specially concurring.)—I concur in the result. I do not concur fully in the discussion. I readily agree that the distinction between *legislative* expenses and *personal* expenses is to be observed in the consideration of the case. The power to allow the former inheres in the legislative function and may always be exercised. The power to allow the latter does not so inhere, nor may it be exercised by the legislature, except to the extent of constitutional permission. Section 25, Article 3, of the Constitution expressly forbids the allowance of any other *personal* expenses than the mileage provided for in said section. Chapter 1, Acts of the 43 G. A., does purport to permit the allowance of *personal* expenses, which Section 25, Article 3, of the Constitution forbids. The Act is therefore in violation of the Constitution. In my judgment, that ends the argument. I think that the decision should be predicated upon that ground and not upon the ground that the Act in question constituted an allowance for *compensation*. The Act purports to allow *personal expenses*. I would read it according to its terms.