## DIXON et al. v. SHAW, State Auditor.

No. 18097—Opinion Filed Feb. 1, 1927.

Rehearing Denied March 1, 1927.

(Syllabus.)

States—Legislature—Compensation of Members—Constitutional Limit—Extra Allowance for Room Rent and Meals Inhibited.

The biennial sessions of the Legislature of Oklahoma are required to be held at the seat of government (section 26, article 5, Constitution). Section 21, article 5, of the Constitution provides:

"Members of the Legislature shall receive six dollars per diem for their services during the session of the Legislature, and ten cents per mile for every mile of necessary travel in going to and returning from the

place of meeting of the Legislature, on the most usual route, and shall receive no other compensation: Provided, that members of the Legislature, except during the first session thereof held under this Constitution, shall receive only two dollars per diem for their services after 60 days of such session have elapsed."

This section is a grant and an inhibition. The mileage and per diem constitute the granted compensations Any other allowance to the members out of public funds appropriated for use in payment of hotel room rent and meals while at the capital attending the sessions of the Legislature, is purely personal to the members, is compensation other than that provided, and is inhibited.

Original proceeding for writ of mandamus by J. W. Dixon et al., members of the House of Representatives, against A. S. J. Shaw, State Auditor. Writ denied.

D. A. Stovall, E. P. Hill, Tom Kight, Chas. A. Moon, Paul Sullivan, Claude Briggs, J. A. Watson, A. L. Battenfield, C. W. King, and Leon S. Hirsh (W. A. Ledbetter, of counsel), for plaintiffs.

Edwin Dabney, Atty. Gen.. and J. Berry King, Asst. Atty. Gen., for defendant.

BRANSON, C. J. January 21, 1927, this court sustained a motion filed by the plaintiffs herein, praying it to exercise its original jurisdiction, under section 2, article 7, of the Constitution, and that it permit to be filed, and that the court entertain their petition for, a peremptory writ of mandamus. Thereupon the petition was filed. Its allegations are made by J. W. Dixon and others, about 60 members of the House of Representatives of the Eleventh Legislature of the state of Oklahoma, now in regular biennial session (section 27, art. 5, of the Constitution), as plaintiffs. The writ is sought against A. S. J. Shaw, as State Auditor, defendant, ordering and commanding him to allow and pay certain claims. The claims are receipted bills for expenses incurred by plaintiffs in payment of hotel room rent and for meals. They have been duly filed with the State Auditor, and are in fact for the living costs of plaintiffs at the seat of government of the state of Oklahoma while plaintiffs are serving as members of the Legislature (section 26, art. 5, Constitution). The petition discloses that the said claims were and are duly approved by the auditor of the House of Representatives, and that by House Resolution No. 2, the house auditor was directed to approve such claims of the members for such character of expenses as plaintiffs plead, not exceeding $4 per day. The claims pleaded as having been presented to the defendant

are within the $4 limit. By Senate Bill No. 8 (Session Acts 1927), there was made available by appropriation a sufficient sum of money, as is recited therein:

"To pay the mileage and per diem of the members of the House of Representatives of the Eleventh Legislature and the salaries of the officers and employees of the House of Representatives, and such contingent expenses as may be ordered therefrom, including the preparation and publication of the journals and calendars of House of Representatives." (Senate Bill No. 8, Session Acts 1927.)

Plaintiffs plead that notwithstanding said claims have been duly verified, approved, and filed in legal form, the defendant Shaw, as State Auditor of the state of Oklahoma, refuses to recognize, audit, and honor the same, on the alleged ground that there is no legal authority granted him to pay same under the said appropriation (said Senate Bill No. 8), and further, on the alleged ground that such payment would be in violation of the Constitution of the state of Oklahoma.

The response filed by the defendant raises no disputed questions of fact. The materially pleaded part of the response is that the Constitution of the state fixes the compensation of members of the Legislature, and that any attempted payment of the living expenses of the members, while serving at the capital, is violative thereof.

The court has received the benefit of oral argument from counsel representing the respective parties, and has before it the briefs and authorities on which each rely. It is made plain to the court in both that the plaintiffs, as members of the House of Representatives of the Eleventh Legislature, demand a decision from this court as to whether the Legislature can exercise that same degree of freedom in the matter of providing necessary expenses inuring to the benefit of its own members as it exercises in providing for payment of the expenses incurred by executive, judicial, and administrative officials and employees of the state. Argumentative thereon, reference is made to the appropriations by each biennial session of the Legislature for expenses of the other mentioned departments of state government.

This court can and will discuss this position of the plaintiffs only by calling their attention to the fact that it cannot go beyond the issues raised in the instant action, and its duty at this time is to announce the law on the question here and now present. It cannot, under any rule of law men-

tioned or to which reference is made, determine these issues by what the Legislature has done in the past as to appropriating money for specific purposes for the governmental functionaries mentioned, or by what the Legislature may see fit to do at its present session, or in the future. The court must of a necessity, born of rules or law no less binding on it than the law is binding on the plaintiffs as, to the questions here involved, determine the law on the controversy here at hand, and not undertake to pass upon an issue not raised. We leave their suggested issues, if issues they ever come to be, for determination when they arise, and are presented. We deem it proper to say, however, in passing, that the plaintiffs do not point out, and we are unable to find by an examination, a constitutional provision or provisions governing the other officers and their contingencies even similar to the provision of the Constitution that is now before us for construction. But the constitutional provisions as to such officers largely, if not entirely, leave not only the compensation of the heads of the departments to which reference is made, but their subordinates, and the method and manner and efficiency of the performance of their duties, dependent upon an allowance of public funds by the Legislature, within its discretion as the spokesman for and on behalf of the people to be served. Governmental ends, under our political system, and the method and expenditures incidental to the proper reaching thereof, are placed in the hands of the sovereign Legislature. It represents the will of the people in a degree no less conclusive than constitutional convention, in all matters not either expressly or by clear implication prohibited by the basic law of the state. No one can call such body, or the members thereof, to account for its or their expenditure of public funds, or other matters brought within its control, save and except the people in their sovereign capacity, unless the power of the courts can be invoked to restrain and prevent the completion of a purpose expressed by such body in violation of the basic law of the state.

What we have just said brings us to the first proposition announced by the plaintiffs, to the effect that the Legislature is sovereign, and has no limitations as to expenditures either for its own members or for other departments of state government, save and except where the Constitution of the state or nation has seen fit to place an inhibition. This is so well recognized that it has become all but axiomatic. This court

in many cases has clearly enunciated this rule, following both the logic and the reason of all the courts of this nation, both state and federal. Cooley on Constitutional Limitations (6th Ed. 1890) chapter 7, sections 4, 5, page 201) in part says:

"The judiciary can only arrest the execution of a statute when it conflicts with the Constitution. It cannot run a race of opinions upon points of right, reason, and expediency with the law-making power. * * * The courts are not the guardians of the rights of the people of the state, except as those rights are secured by some constitutional provision which comes within the judicial cognizance. The protection against unwise or oppressive legislation within constitutional bounds is by an appeal to the justice and patriotism of the representatives of the people. If this fail, the people in their sovereign capacity can' correct the evil, but courts cannot assume their rights."

"There is nothing more easy than to imagine a thousand tyrannical things which the Legislature may do, if its members forget all their duties, disregard * * * the obligations they owe to their constituents, and recklessly determine to trample upon right and justice." Sharpless v. Philadelphia, 21 Pa. 147.

On this proposition, contended for by the plaintiffs, this court said in a recent case:

"The sovereign speaks through its legislative body, and the legislative body determines the policy of the sovereign, which has no limitation as to expenditures save and except those which are expressly placed on its exercise by the Constitution of the state." Graham v. Childers, State Auditor, 114 Okla. 38, 241 Pac. 178.

Admitting, as established, the first proposition of plaintiffs, as outlined, supra, we come to the question raised by the respondent as to the constitutionality of the claims which the instant action seeks to compel him to pay. We shall not indulge in a discussion raised by the respondent as to the sufficiency of the House resolution authorizing such expenditures out of the appropriation made by the said bill mentioned above (Senate Bill No. 8), but shall treat this matter as if such resolution had received the sanction of the Senate and the approval of the Governor, and thereby had the force and effect of law. The constitutional provision primarily involved herein is section 21 of article 5 (section 83, article 5, William's Constitution). This section is:

"Members of the Legislature shall receive $6 per diem for their services during the session of the Legislature, and 10 cents per mile for every mile of necessary travel in going to and returning from the place of meeting of the Legislature on the most

usual route, and shall receive no other compensation: Provided, that members of the Legislature, except during the first session thereof held under this Constitution, shall receive only two dollars per diem for their services after 60 days of such session have elapsed."

We deem it not amiss to point out in connection with this section, and as a pa.t of the same article and following on the heels of said section, this provision:

"The members of the Legislature shall meet at the seat of government on the first Tuesday after the first Monday in January, at 12 o'clock noon, in the year next succeeding their election, or upon such other day as may be provided by law." (Section 26, art. 5; sec. 88, art. 5, Williams' Constitution.)

Following thereon, we again find:

"The Legislature shall hold regular biennial sessions as herein provided, but this shall not prevent the calling of a special session of the Legislature by the Governor." (Section 27, art. 5; sec. 89, art. 5, William's Constitution.)

We call attention to the last two sections, for, as we view it, they show clearly that the plaintiffs, as members of the Legislature, are required to perform their duties at least primarily, and as a legislative body, at the seat of government and that section 21, providing the compensation, is drawn and must be construed in the light of the place where such services are performed; and further, for the reason that plaintiffs cite cases in support of their contention which apparently are based upon the omission of any constitutional requirement as to where the functions of the office.s involved shall be exercised.

The importance of the question here is such that we feel impelled to make reference to the cases cited and relied upon by the p'aintiffs and by the defendant; for they on their face are not in unison, and their apparent conflict justified the action of the plaintiffs in demanding an interpretation of this provision. Especially is the last statement true, in view of the fact that it could not be conceded that any one would be possessed of right reason who would contend that the compensation given the members of the sovereign Legislature of this state is, under the changed conditions of cost of living since the said provision was drawn, adequate, but, on the contrary, i. is so inadequate as to all but p'eclude the representatives—the spokesmen of the sovereign—from a proper consideration of the important matters biennially called to

their attention, and upon which the interest of the state demands that they act. But, as said by one court:

"Public office is taken and held with the emoluments and bu.dens which the law imposes, and the burdens are or may be far beyond the compensation allowed in many cases, but this gives no valid claim for additional compensation." McHenderson v. Anderson Co. (Tenn.) 59 S. W. 1020.

The first case presented in plaintiffs' argument is State ex rel. Payne v. Reeves (S. D.) 184 N. W. 993. This cause was determined by a special court of that state, in 1921. It involved an act of the Legislature authorizing the payment to the judges of the Supreme Court of a certain sum as expenses while at the capital. We cannot fail to note that at the inception of the discussion of said case it is recited that the Constitution of that state does not require the judges of the Supreme Court to perform their official duties at the state capital; and in syllabus No. 6, which determines the law on the direct question involved, after reciting the legislative enactment granting members of the court $150 per month as expenses of living at a place other than their legal residence (to wit, the capita ) and holding said allowance not to contravene the constitutional provision on the subject, closes with this qualification: "In view of the fact that the judges are not required t.) reside at the capital." This opinion of a special court largely follows the reasoning of the duly constituted court in a previous decision, in which the members who decided the case were the beneficiaries of the appropriation and in which the said beneficiaries held the appropriation a constitutional enactment. McCoy v. Handlin, State Auditor, 35 S. D. 487, 153 N. W. 361.

But to further sustain the conclusion there in reached, that court cited a Tennessee case, which is also urged by the plaintiffs herein. (State ex rel. v. Thomason [Tenn.] 221 S. W. 491.) In the said last-named case, the question was the power of the Legislature, under the constitutional provision, to pass an act authorizing each member to draw $150 "for stenographic work and other necessary expenses." In the body of the opinion in said case it is stated:

"Were the questions before us those involving the compensation of the members of the Legislature, as distinguished from the'r expenses as designated in the appropr'a'ion act, there could be no doubt of the inva'id-ity of the appropriation sought to be made."

Attention must be directed to the discriminating language just quoted, wherein the ex-

pense referred to in the above-quoted part of the act is confined by the language, "as designated in the appropriation act." Again directing attention to the appropriation act, we find that it has an allowance of $150 for each member for **stenographic work and other necessary expenses.** We can see that the court could presume that, in this provision of the appropriation act allowing each member for stenographic work and other necessary expenses, such stenographic work and other necessary expenses were to be in the performance of the official and legislative duties, and as necessary thereto. The law as announced in the syllabus in said case does not follow out the discrimination pointed out in the body of the opinion; for, in closing, the court says:

"It is insisted that the appropriation is invalid for the reason that it is an attempt by indirection or evasion to increase the compensation of the members of the Legislature in contravention of the section of the Constitution."

Immediately thereafter, it is further said:

"The **language used in the act** is '$150 for stenographic work and other necessary expenses to each member of the General Assembly.'"

While we do not follow these discriminating statements in the body of the opinion, in that we are unable to reconcile them and the implications which they make clear that the court was indulging in order to sustain such an appropriation, with the syllabus as set forth in the opinion, yet it must be noted that the court in that case did not permit itself to pass upon the question of the use of that money to pay hotel bills and living expenses while in attendance upon the Legislature. While the constitutional provision of that state is not in the same language as that of Oklahoma governing the compensation of members of the Legislature, yet its provision, when the rules of interpretation are applied thereto, are no more subject to extension than that of this state.

There are other cases referred to by the plaintiffs, which are cited in the specific cases mentioned, but none of them go as far on the direct question here at issue as the South Dakota and the Tennessee cases.

The defendant cites a recent case decided by the duly constituted court of the state of Kansas (State ex rel. Griffith, Atty. Gen., v. Turner, State Auditor, 233 Pac. 510). The syllabus in said case is:

"The act of the Legislature of 1925, which provides that $5 a day expense money shall be paid to the Lieutenant Governor and each member of the Legislature, for each day of any regular or special session, is invalid, because it violates section 3 of article 2 of the Constitution, which fixes the compensation of the members of the Legislature at not more than $150 for each regular session, and not more than $90 for each special session, and violates section 15 of article 1 of the Constitution, which prohibits the Legislature from increasing or diminishing the compensation of the officers named in that article, during the period for which they shall have been elected."

The Constitution of the state of Kansas, when the rules of construction are applied thereto, is no different in substance and intendment, except as to the amount allowed, than that of Oklahoma. It is:

"The members of the Legislature shall receive as compensation for their services the sum of $3 for each day's actual service at any regular or special session, and 15 cents for each mile traveled by the usual route in going to and returning from the place of meeting. * * *"

In the body of the opinion that court said:

"All **legislative** expenses may be properly paid. The expenses that may be paid are not those that are incurred by a member of the Legislature because he is at the capital city. They are those that are incurred by him in the performance of his duties. They are legislative expenses, not personal expenses. The distinction between expenses that are legislative and those that are personal is that legislative expenses are those that are necessary to enable the Legislature to properly perform its functions while those that are personal are those that must be incurred by a member of the Legislature in order to be present at the place of meeting * * * expenses for his personal comfort and convenience, which have nothing to do with the performance of his duty as a member of the Legislature."

Therein and thereby the language draws the line of demarcation which the well-reasoned cases on the subject uniformly recognize. What are proper legislative expenses, in order to enable the body to function as not only a law-making but an inquisitorial body, and whatever amount in its judgment is necessary therefor, under the prevailing conditions of life, is a matter within the determination of the Legislature and over which the courts can and would exercise no control. But, as pointed out supra, the section of the Oklahoma Constitution fixing the compensation is followed all but immediately by a section which requires that the sessions of the Legislature be held at the capital, thus making it clear that the compensation allowed is in view of the fact that the members must serve at the capital. This, how-

ever, cannot be construed or held in any wise to impair the discretion of the Legislature in allowing expenses in event, in its judgment in the exercise of any of its powers. legislative or inquisitional, it or any of its members, as committees or otherwise, should deem it advisable or expedient to make investigation that required their leaving the capital, that the expenses incident thereto could not be provided for. The reasoning of said last-mentioned case is supported by other well-reasoned authorities. Terrell v. Middleton (Tex. Civ. App.) 187 S. W. 367; Ashton v. Ferguson (Ark.) 261 S. W. 624; Leckenby v. Post Printing & Publishing Co. (Colo.) 176 Pac. 490; State ex rel. Raine, 49 Ohio St. 580, 31 N. E. 741; In re Advisory Opinion to the Governor (Fla.) 107 South. 366.

While we have discussed these cases as being by analogy of reasoning persuasive, yet in doing so the court does not concede that it needs go further than the provisions of the Constitution of this state, measured by well-recognized rules of interpretation of constitutional and statutory provisions, to reach what it concludes the law is in the instant case. Thereby the whole compensation, personal to the members, is fixed, and we cannot sanction an addition thereto. We not only approve but adopt the reasoning of the Supreme Court of the state of Kansas in the said case of Griffith v. Turner, as to the distinction between expenses that are legislative and amply within the authority of that body to provide and use, and those which are purely personal in their nature and by reason thereof are, under the said section 21 of the Oklahoma Constitution, an allowance of a compensation other than that provided in the said section. A rule well recognized and often quoted in its Latin terminology is expressio unius est exclusio alterius. When said provisions are called in question, as here, we reach no conclusion but the language used is to be measured by such a well-recognized rule existent at the time of the adoption of the Constitution. But, irrespective of rules of interpretation, we think that the language employed by the makers of the basic law of the state should not be given a strained or subtle meaning, but such meaning as the average citizen would conclude the language imports. This for the reason that the electorate, in ratifying the document and thereby breathing life into the same, considered the provisions as the language used fairly imports. "Compensation," as used in the said section, refers to both the per diem and the mileage, and no other personal to

the member is permitted. The place of performance of service is at the capital. The living expenses in the performance of the duty of the members cannot be added to the compensation expressly allowed.

The writ is denied.

MASON, HARRISON, PHELPS, LESTER, HUNT, CLARK, RILEY, and HEFNER, JJ., concur.