**C. H. SPEARMAN, Jr., Plaintiff,**

**v.**

**Carl WILLIAMS, Director of State Finance of the State of Oklahoma, Defendant.**

**No. 41717.**

Supreme Court of Oklahoma.

Feb. 15, 1966.

598

Joseph E. Mountford, Miami, James Connor, Bartlesville, Roy Grantham, Ponca City, Robert S. Gee, Miami, for plaintiff.

Charles Nesbitt, Atty. Gen., Burck Bailey, Asst. Atty. Gen., Oklahoma City, for defendant.

DAVISON, Justice.

This is an original action in this court by C. H. Spearman, Jr., (plaintiff) for a writ of mandamus ordering Carl Williams, Director of State Finance (defendant) to audit and allow plaintiff's claim for office and travel expense for the latter part of July, 1965. The defendant disallowed the claim on advice of the Attorney General.

The plaintiff was and is a member of the House of Representatives of the State of Oklahoma. Plaintiff is a member of the State Legislative Council for the reason that pursuant to 74 O.S.1961, § 451, all members of the House of Representatives are made members of such Legislative Council.

Relative to the duties of the Legislative Council, 74 O.S.Supp.1965 § 452, states in part as follows:

"It shall be the duty of the Council to collect information concerning the government and general welfare of the state, examine the effects of previously enacted statutes and recommend amendments thereto, deal with important issues of public policy and questions of statewide interest, and to prepare a legislative program in the form of bills or otherwise, as in its opinion the welfare of the state may require, to be presented at the next session of the Legislature."

And the pertinent portion of 74 O.S. Supp.1965 § 456, provides:

"(c) It shall be the duty of the members of the Legislative Council to maintain offices within his district for the purpose of examining the effects of legislation and research on pending items of study before the Legislative Council and to travel throughout his legislative district to collect information and research items of study pending or to be submitted before the Legislative Council or the Legislature. In lieu of all expenses in maintaining said offices, the sum of Fifty Dollars ($50.00) monthly is hereby authorized, and in lieu of said travel expenses throughout a member's district, the sum of Fifty Dollars ($50.00) monthly is hereby authorized."

It was pursuant to the last quoted part of the statute that plaintiff filed his claim of expenses.

Defendant contends that the portion of Sec. 456, above quoted, providing for payment of the expenses of maintaining an office and traveling within the legislative district is unconstitutional because it violates Oklahoma Constitution, Art. 5, Sec. 21, which states:

"Members of the Legislature shall receive monthly salaries of One Hundred Dollars ($100.00) for their services during their term of office regardless of when their term commences or expires except, that in lieu thereof, they shall receive fifteen dollars ($15.00) per diem for not to exceed seventy-five (75) legislative days for their services during the regular or special session of the Legislature and ten cents per mile for every mile of necessary travel in going to and returning from the place of meeting of the Legislature, on the most usual route, and shall receive no other compensation."

It is defendant's position that the above expenses are in fact additional compensation to the members of the Legislature and therefore forbidden by this section of the Constitution.

Before discussing the constitutional objections to the statute, supra, certain fundamental principles should be stated.

The Constitution (Art. 5, Sec. 36) vests in the legislature the supreme power to enact laws to meet the needs of the State; the Legislature's acts are presumed constitutional and should be upheld unless plainly and clearly within express prohibitions and limitations fixed by the Constitution, or unless it exercised its authority arbitrarily and capriciously; and any doubt should be resolved in favor of the power of the Legislature. Tate v. Logan, Okl., 362 P.2d 670; Allen v. Burkhart, Okl., 377 P.2d 821; Gates v. Easter, Okl., 354 P.2d 438, 441.

An Act of the Legislature will not be declared unconstitutional unless its conflict with the Constitution is clear and certain. State ex rel. Independent School District No. One of Tulsa County v. Williamson, Okl., 352 P.2d 394.

The State Constitution is a limitation upon the power of the Legislature and not a grant of power to that body, and the authority of the Legislature extends to all rightful subjects of legislation not withdrawn by the Constitution or in conflict therewith. Tate v. Logan, supra.

Defendant argues that the fact that all members of the Legislature are members of the Legislative Council (Sec. 451, supra), and therefore all such persons are entitled to the expense allowance provided in Sec. 456, supra, discloses an evident subterfuge to avoid or circumvent the Constitutional restriction (Art. 5, Sec. 21) against compensation in addition to that therein provided. In this connection we point out that paragraph (a) of Sec. 456, supra, provides for an Executive Committee of the Legislative Council to be composed of 15 Senators and 15 Representatives and for the appointment by it of standing and special committees from the Council, and for reports on the legislative studies made by them. It is clear that within the framework of the statutes and others the Legislature has developed a policy designed to gather and evaluate information during the interim for use in legislative sessions.

Oklahoma is not unique in having a Legislative Council. In State ex rel. James v. Aronson, 132 Mont. 120, 314 P.2d 849, 854, a number of States are listed which have a similar organization by that or some other name. The creation of such an organization was for the purpose of helping the Legislature in the performance of its legislative function, and the composition of the Legislative Council was a matter of the discretion of the Legislature. In Tate v. Logan, supra (362 P.2d 670, 673) citing Dixon v. Shaw, 122 Okl. 211, 253 P. 500, 50 A.L.R. 1232, the following statements are set forth:

" 'Governmental ends under our political system, and the method and expenditures incidental to the proper reaching thereof, are placed in the hands of the sovereign legislature. * * *'

" ' "The sovereign speaks through its legislative body, and the legislative body determines the policy of the sovereign which has no limitation as to expenditures, save and except those which are expressly placed on its exercise by the Constitution of the state. * * *" ' "

In resolving the present controversy we must necessarily consider the effect of the Oklahoma Constitution, Art. 23, Sec. 10, which provides in pertinent part, "Except wherein otherwise provided in this Constitution, in no case shall the salary or emoluments of any public official be changed after his election or appointment, or during his term of office, unless by operation of law enacted prior to such election or appointment; * * *."

"Emolument" is defined in Webster's New International Dictionary, Second Edition, as "Profit from office, employment, or labor; compensation; fees or salary."

In Christopherson v. Reeves, 44 S.D. 634, 184 N.W. 1015, 1019, the court held that the word "compensation" is synonymous "with salary, pay, or emolument, and is intended to convey the idea of reward for, or compensation for official services; that it does not convey the idea of the repayment of expenditures allowable by law."

From our examination of all of the decisions cited by the parties and of many other decisions and authorities, it is clear that the diverse opinions given by other courts, when presented with controversies similar to the one now before us, were because of the many and varied constitutional and statutory provisions under which legislators and public officers sought compensation, allowances, and expenses by reason of their official positions. See Annotation in 5 A.L.R.2d 1182. From our research it appears to us that in many cases involving "expenses," the settlement of the dispute as to whether the expenses are additional compensation and a change in salary or emoluments, in violation of the constitution, depends on whether the allowed expenses are legislative (official) or personal expenses. Generally, the cases may be divided into two groups as expressed in 43 Am.Jur., Public Officers, 1965 Cumulative Supplement, Sec. 368.5, as follows:

"The courts have made a distinction between official expenses and personal expenses and concur that the legislature has the power to appropriate public funds for the official expenses of all departments of the state government. The conflict is on the question whether the legislature has the power to allow personal expenses where the constitution contains a provision fixing or limiting the salary or compensation of a public officer and is genuine, developing from the application of rules of construction applicable to interpretation of statutes and constitutional provisions."

The following are a few of the cases in which this distinction is recognized: Manning v. Sims, 308 Ky. 587, 213 S.W.2d 577, 5 A.L.R.2d 1154; Dixon v. Shaw, 122 Okl. 211, 253 P. 500, 50 A.L.R. 1232; State ex rel. Griffith v. Turner, 117 Kan. 755, 233 P. 510; Gallarno v. Long, 214 Iowa 805, 243 N.W. 719; Scroggie v. Scarborough, 162 S.C. 218, 160 S.E. 596; State ex rel. Overhulse v. Appling, 226 Or. 575, 361 P.2d 86.

In Dixon v. Shaw, Okl., supra, the question presented was whether claims of a legislator for expense of meals and hotel at the Capital City and during the session could be paid from an appropriation for payment of legislative expense and "such contingent expenses as may be ordered therefrom." The Constitution, Art. 5, Sec. 21, at that time provided for compensation only on a per diem basis during the session and mileage, with the same presently existing limitation "and shall receive no other compensation." The decision held that these were personal expenses and that payment of such expenses would violate the constitutional limitation against other compensation. In the opinion the court relied upon the Kansas case of State ex rel. Griffith v. Turner, supra, and stated:

"* * * We not only approve, but adopt, the reasoning of the Supreme Court of the state of Kansas, in the said case of Griffith v. Turner, as to the distinction between expenses that are legislative and amply within the authority of that body to provide and use, and those which are purely personal in their nature, and by reason thereof are, under the said section 21 of the Oklahoma Constitution, an allowance of a compensation other than that provided in the said section. * * *"

And in Manning v. Sims, supra (213 S.W.2d 577, 580), the opinion held:

"* * * The prohibition against a change of salary or compensation during the term of a public officer is a familiar one in state constitutions. Unless the contrary is clearly expressed, it is consistently held that the allowance of reasonable expenses incurred in the discharge of the official duties of an office is neither salary, compensation nor an emolument of the office within the purview of a constitutional prohibition against a change in compensation during the term. * * *"

It is our conclusion that in the present situation the word "compensation," appearing in Art. 5, Sec. 21, is synonymous

with "salary or emolument" in Art. 23, Sec. 10 of the Constitution. We find nothing in these constitutional provisions and terms that negatives or conflicts with the allowance of reasonable expenses incurred in the discharge of official duties. As stated above, it is the allowance of personal expenses that violates the constitutional limitation.

The 1939 Legislature (Laws 1939, p. 19, Sec. 1) created a State Legislative Council to consist of a limited number of Senators and Representatives. In 1949 the Legislature (Laws 1949, p. 629, Sec. 1; 74 O.S. 1961, § 451) enlarged the Council to consist of all members of the Legislature. It appears obvious the Legislature concluded there was a need and obligation to expand the Council and its activities to include investigative research, for a better and more informed knowledge concerning legislation beneficial to the government and general welfare of the State. The 1965 Statute, Sec. 456(c) supra, provides that it shall be the "duty" of members of the Legislative Council "to maintain offices within his district" and "to travel throughout his legislative district" for the enumerated purposes, which are related to items of study before the Legislative Council. Aside from, and as distinguished from the obligation of a member of the Legislature to concern himself with matters of legislative interest and perform legislative services by reason of his official position and the compensation paid him, the statute does impose upon him, as a member of the Legislative Council the duty and therefore the obligation to maintain an office and to travel withi.: his district. Before the passage of this act it was not required of members of the Legislature to travel throughout their legislative districts. By reason of the act it now becomes their mandatory duties to travel over their districts for the specific purposes contained in the act. It is not to be assumed that the Legislature would intend to violate the constitutional provision against compensation other than that provided by law. A reasonable construction of the statute is that the

office and travel were deemed necessary as assistance in the performance of its legislative function.

In Dixon v. Shaw (253 P. 500, 504), supra, it was held:

"* * * What are proper legislative expenses, in order to enable the body to function as not only a lawmaking, but an inquisitorial, body, and whatever amount in its judgment is necessary therefor, under the prevailing conditions of life, is a matter within the determination of the Legislature, and over which the courts can and would exercise no control."

The functions of government have grown and expanded greatly since statehood, many new boards, commissions and agencies having been created to carry out the ever increasing necessities, welfare and desires of our people. Many members of the Legislature, past and present, have not maintained offices within which to transact legislative business in their districts. The Legislature has now, due to the present press of legislative business, deemed it advisable for each member thereof to maintain an office in their respective districts so they can be more available and accessible to advise and consult with their constituents, which the legislative body evidently thought would inure to the benefit of the whole state.

■ It is our conclusion that such office and traveling expenses incurred by members of the Legislative Council are expenses of the performance of official duties and are not compensation, salary or emoluments, within the meaning of Art. 5, Sec. 21, and Art. 23, Sec. 10 of the Constitution.

The defendant also complains of the allowance of a lump sum of $50 per month for each of said items in lieu of the expenses of maintaining an office and traveling within the district. It is contended that if the Legislature may validly allow such sum then it could allow larger or exorbitant amounts in excess of actual nec-

-essary expenses, thus increasing compensation in violation of Art. 5, Sec. 21, of the Constitution.

The authorities heretofore cited largely dispose of this contention. In Manning v. Sims, supra (213 S.W.2d 577, 582) in holding valid a monthly lump sum allowance made by the Legislature for the expenses of certain state officers, it was said:

"The scope of judicial examination into the action of the Legislature in making a lump sum appropriation in lieu of actual expenses incurred is—and should be—rather narrow. The legislative declaration of the nature and purposes of the allowance is binding upon the courts, and will be upheld, unless from the Act itself and without extraneous aid, the court can say without hesitation that the legislation is, in fact and in truth, a device to increase compensation."

In Eberle v. Nielson, 78 Idaho 572, 306 P.2d 1083, the court upheld a statute granting a $5 daily lump sum allowance to legislators as committee expenses while serving as a member of any committee, and stated this was tantamount to a finding by the Legislature that each member of its committees would incur expenses in not less than that amount. The court stated:

"The legislators are sworn constitutional officers of the state. It is not to be assumed that they would thus seek to violate the fundamental law. As a body they have broad powers and wide discretion to find and declare facts incident to legislative enactments, and the courts cannot interfere until it is clearly made to appear that the finding or declaration of the legislature is so unreasonable as to be clearly a violation of the constitutional limitation."

The Eberle case relies on State ex rel. Payne v. Reeves, 44 S.D. 568, 184 N.W. 993, and Manning v. Sims, supra.

The defendant argues in effect that the provisions of the statute, Sec. 456(c), are so general as to the mode and extent of fulfilling the duty to maintain an office

and travel for the enumerated purposes, that the recipients of the expense allowance can or may perform in accordance with their own ideas as to what constitutes performance of such duty. Defendant contends this shows the expense sums are in fact additional compensation in whole or in part. This argument is not sufficient to lead to the conclusion, without hesitation and beyond a reasonable doubt, that the legislation was a device to increase compensation. At the most it amounts to an inference.

This court has held that the burden of showing a statute is unconstitutional rests upon the party asserting it and that a statute cannot be declared unconstitutional on inference. Board of Com'rs of Marshall County v. Shaw, 199 Okl. 66, 182 P.2d 507, and Swanda v. Swanda, 207 Okl. 186, 248 P.2d 575. Defendant has not sustained this burden.

The function of this court is to determine the validity or invalidity of the statute. In Application of Oklahoma Capitol Improvement Authority, Okl., 355 P.2d 1028, it is stated:

"In construing the constitutionality of a statute, the Supreme Court is not authorized to consider its propriety, desirability, wisdom, or its practicability as a working proposition. Those questions are clearly and definitely established by our fundamental law to a certainty as functions of the legislative department of government. The function of the court is clearly limited to the determination of the validity or invalidity of the Act."

There is some diversity of opinion among the courts on the principal issue herein. See Annotation 5 A.L.R.2d 1182. To some extent this is accounted for by reason of the diversity of the constitutional provisions. Our conclusion is based upon the provisions of the Oklahoma Constitution and the principles of law herein set forth.

We are not unmindful of the fact that the voters disapproved a proposed constitution-

al amendment in an election held on November 3, 1964, which amendment would have increased the *compensation* of the members of the Legislature, if adopted. The subject of the amendment was *"compensation"* and the voters refused to approve an increase in compensation. The concern of the statute under attack here (Sec. 456(c) supra) is the legality of (legislative) *"expenses."* Neither the existing constitutional provision (Art. 5, Sec. 21), nor the proposed amendment, supra, mention or contain any limitation regarding *legislative expenses.*

For the foregoing reasons we are of the opinion and hold, that 74 O.S.Supp. 1965, Sec. 456(c) is not violative of Article 5, Sec. 21, and Article 23, Sec. 10, of the Constitution.

The writ of mandamus is granted.

All of the Justices concur.