STATE OFFICERS AND EMPLOYEES
Title 74 O.S. 500.51 [74-500.51] et seq. (1977) does not apply to the Department of Wildlife Conservation, and its terms mandate the total compensation a relocated employee may receive as expenses for moving. Since a relocation allowance of any amount is not provided for, and the Act is exclusive, any payment in addition to that provided for by the Act would be unauthorized. It is further the opinion of the Attorney General that to the extent that this opinion overrules statements made with regard to 74 O.S. 828.2 [74-828.2] (1977) as recited in Attorney General Opinion No. 77-254 that such statements are hereby and herein superseded and 74 O.S. 1977 828.2 [74-828.2] (1977) is not applicable to the Wildlife Conservation Department. Furthermore, the Wildlife Conservation Commission is prohibited by virtue of 29 O.S. 3-305 [29-3-305] (1976) from expending for operations, fees collected from the sale of lifetime licenses, but may expend the interest derived from the investment of such fees for operations as recited in Attorney General Opinion No. 77-254. The Attorney General has considered your request for an opinion on the following two (2) questions: "(1) Is 74 O.S. 500.51 [74-500.51] et seq. (1977) applicable to the Wildlife Conservation Department mandating the total compensation a relocated employee may receive as expenses incurred for moving. "(2) Does 74 O.S. 500.55 [74-500.55] (1977) forbid the Wildlife Conservation Department from compensating a relocated employee a one-time relocation allowance of $2,500.00 if the employee is selling a home." Your first question concerns the applicability of 74 O.S. 500.51 [74-500.51] et seq. (1977) to the Department of Wildlife Conservation. The purpose of that Act is as follows: "To provide partial payment by the State of Oklahoma to a certified carrier for the cost of moving any employee permanently transferred at the request of a state agency." Article XXVI, Sections 1-4 of the Oklahoma Constitution created the Oklahoma Department of Wildlife Conservation. Enabling legislation is found at 29 O.S. 3-101 [29-3-101] et seq (1977). If there were some specific or implied powers in the Constitution providing for compensation to relocated employees of the Department, a statutory enactment purporting to effect them would have no effect, since constitutionally created powers supersede subsequent legislative enactments, Cornell v. McAlister,121 Okl. 285, 249 P. 959 (1919). The power of the Legislature to enact binding legislation is set forth in the Oklahoma Constitution, Article V, Section 36: "The authority of the Legislature shall extend to all rightful subjects of legislation, and any specific grant of authority in this Constitution, upon any subject whatsoever, shall not work a restriction, limitation, or exclusion of such authority upon the same or any other subject or subjects whatsoever." Although this section was interpreted as a limitation upon the power of the Legislature in Spearman v. Williams, 415 P.2d 597 (Okl. 1966), the authority was nevertheless said to extend to all rightful subjects of legislation not withdrawn by the Constitution or in conflict therewith. The Legislature, therefore, has authority to enact binding legislation on any matter unless the Constitution places the subject matter of that legislation outside its reach. Furthermore, an act of the Legislature will not be declared unconstitutional unless its conflict with the Constitution is clear and certain, Spearman, supra. With this premise established, we are able to deal with the question of whether or not the relevant enactment is in conflict with the constitutional provision. Article XXVI, Section 2, Section 3 and Section4 of the Oklahoma Constitution deal in part with the authority of the Department and its Director: "Section 2. Game and fish laws not repealed — Acquisition of property. "Nothing in this Act shall repeal any existing laws now on the Statute, pertaining to game and fish. "The Commission may acquire by purchase, gift, grants-in-aid from the Federal Government, or otherwise, all property necessary, useful or convenient for its use in carrying out the objects and purposes of this Article. "Section 3. Director of Wildlife Conservation "A Director of Wildlife Conservation shall be appointed by a majority vote of the entire Commission, who shall be removed only for cause and after public hearing by the Commission. His duties and compensation for his services shall be fixed by a majority vote of the entire Commission. "The Director shall, with the approval of the Commission, appoint such assistants and employees as the Commission may deem necessary. "The Commission shall determine the qualifications of the Director, all assistants and employees. No Commissioner shall be eligible for employment as Director or otherwise. "Section 4. Disposition of funds "The fees, monies, or funds arising from the operation and transactions of said Commission and from the application and the administration of the laws and regulations pertaining to the bird, fish, game and wildlife resources of the State and from the sale of property used for said purposes shall be expended and used by said Commission for the control, management, restoration, conservation and regulation of the bird, fish, game and wildlife resources of the State, including the purchase or other acquisition of property for said purposes, and for the administration of the laws pertaining thereto and for no other purpose." A plain reading of the above-quoted constitutional provisions reveals that the subject of compensation for relocated employees is not placed within the authority of the Department; thus the Legislature may rightfully enact legislation covering this area. This determination is to be distinguished from those situations wherein a statute attempts to enact legislation in areas wherein the Constitution has already granted sole authority to the agency, thus precluding legislative prerogative. For example, 29 O.S. 3-105 [29-3-105](2) (1977) provides in pertinent part, as follows: ". . . The Director shall fix and determine the salaries and wages to be paid under and subject to the rules and regulations as promulgated by the Commission . . ." A statute which is in irreconcilable conflict with a constitutional provision has no effect. The powers of a constitutionally created entity, specifically or impliedly reserved exclusively to that entity by provisions of the Constitution, cannot be abrogated or nullified by statutory enactment. Cornell v. McAlister, supra. An example of this type of situation can be found in 74 O.S. 828.2 [74-828.2] (1977). This statute provides as follows: "All state agencies who employ people in the exempt and unclassified service of the state, whose salaries are not prescribed by law, shall grant such employees a salary increase on the same basis as prescribed in this act for personnel under the Merit System of Personnel Administration." The issue of whether or not the Oklahoma Merit System of Personnel Administration applies to the Department of Wildlife Conservation with regard to number and qualifications of assistants and employees has been previously expressed in prior Attorney General opinions. In Opinion No. 71-239 the applicability of said statutory provisions was discussed. The following language is found in said opinion: "The Supreme Court of the State of Oklahoma had occasion to construe the statutes establishing the Merit System in the case of Schmitt v. Hunt, 359 P.2d 198. The Court held that the Merit Act was applicable to the Insurance Department of the State of Oklahoma despite a previous legislative provision delegating appointive power of Insurance Department personnel to the Insurance Commissioner. The vital distinction in that case and the question before us here is that the appointive powers over personnel is conferred on the Director of Wildlife Conservation by constitutional enactment whereas the similar powers granted to the Insurance Commissioner is a creature of legislative enactment. The determination of personnel standards concerning the Department of Wildlife Conservation is delegated directly to the Wildlife Conservation Commission by the Oklahoma Constitution in Article XXVI, Section 1 and Section 3, supra. In this regard we are given guidance in Schmitt v. Hunt, supra, where the Court stated, after discussing the three constitutional provisions dealing with the Insurance Department and the Insurance Commissioners: 'There is nothing in these sections vesting the Insurance Department or Insurance Commissioner the power or right to appoint the employees of these offices. Sections 22 and 24 subject such offices to the force and provisions of laws later passed by the Legislature. Without further elaboration we think such provisions eliminate any contention of continued appointive power under any provisions of law prior to the adoption of the Constitution.' (Emphasis added) "Thus, the Court's holding, by implication, states that they would be persuaded differently when dealing with a specific constitutional provision such as Article XXVI, creating the Department of Wildlife Conservation." (Emphasis added) The Opinion concluded: "It is, therefore, the opinion of the Attorney General that your question be answered in the negative. Without prior amendment to the State Constitution adopted in conformance with constitutional requirements, the Legislature may not, by passage of an appropriate act, prescribe the provisions of the Oklahoma Merit System of Personnel Administration to the Department of Wildlife Conservation." In following legislative history with regard to the powers and duties of the Department of Wildlife Conservation and its Director, it is important to note that with the 1974 recodification of the Wildlife Code all provisions negating the authority of the Director to set salaries were eliminated. For example, 29 O.S. 253 [29-253] (1971) provided as follows: "The first money of the increase of the fee shall be used to raise salaries of all rangers up to the national level." This attempt to designate how fees collected by the Department would be applied to salaries was eliminated in the codification, and the Legislature did not attempt to exercise any authority in this area in the recodification of Title 29 as it applies to the Wildlife Department. As indicated above, 29 O.S. 3-105 [29-3-105](2) (1977) clearly indicates that the Legislature recognized the fact and therefore enunciated the constitutional authority of the Director of the Oklahoma Wildlife Department of Conservation to fix and determine the salaries and wages to be paid to its employees. However, this constitutional investiture of authority in the Director was not recognized prior to the recodification of the Wildlife Statutes and does not appear in 29 O.S. 125 [29-125] (1971) wherein the Legislature, as it had in 29 O.S. 253 [29-253], attempted to control salaries paid to Department employees. The question of the authority of the Department to control all matters concerning salary and wages paid to its employees was again discussed in Attorney General Opinion No. 76-277. That Opinion discussed Senate Bill No. 621 codified as 74 O.S. 3601 [74-3601] (1976) in which the Legislature specified the number of fulltime equivalent employees that could be retained and the total funds from all sources which could be expended by the Wildlife Conservation Commission for the payment of any payroll, salary or wages of employees. The question was asked whether or not said legislation was binding upon the Commission. In the Opinion, the following language appears: "An attempt on the part of the Legislature to encroach upon the authority of the Commission by setting a ceiling on the number of employees that may be appointed is an attempt by the Legislature to exercise control in an area in which it has been constitutionally excluded and is without authority. "In the same vein an attempt to set a ceiling on the amount of funds that may be appropriated for salaries is also an impermissible, unconstitutional encroachment. By setting a ceiling on the amount of funds that can be expended for salaries the Legislature is in fact limiting the number of employees that can be retained, which, as discussed above, it is not constitutionally permitted to do." There is a direct correlation between the amount of funds available for salaries and the number of employees an agency can retain. Therefore, in the instant situation, an attempt to enforce the provisions of 74 O.S. 828.2 [74-828.2] (1977) would be an attempt to control the amount of money which the Wildlife Commission may expend for salaries and such is an indirect but nonetheless a distinct encroachment upon the constitutionally granted authority of the Commission to determine the number of employees it wishes to retain. Since 74 O.S. 828.2 [74-828.2] (1977) would impermissibly encroach upon the constitutional authority of the Department of Wildlife Conservation, it cannot be construed to apply to the Department and Department salary increases for its employees are not controlled thereby. To the extent that this opinion is inconsistent with Attorney General Opinion No. 77-254, the statements made herein with regard to 74 O.S. 828.2 [74-828.2] (1977) are to be considered controlling and supersede any statements or opinions issued with regard to said statute in Attorney General Opinion No. 77-254. It should be further noted herein that in Opinion No. 77-254 the answer to the question of whether or not 29 O.S. 3-305 [29-3-305] (1977) prohibits the Wildlife Conservation Commission from expending for operations fees collected from the sale of lifetime licenses, is in no way changed, or altered by this opinion. Your second question concerns the propriety of a one-time relocation allowance payable to an employee. Title 74 O.S. 500.53 [74-500.53] (1977) provides in pertinent part: "Any employee who is permanently transferred at the request of any state agency . . . shall be entitled to payment . . . for the following services . . .: ". . . "Any additional moving expenses incurred as a result of said transfer shall be assumed by the employee." Title 74 O.S. 500.55 [74-500.55] (1977) provides further guidance wherein it states: "No state agency shall move the household goods and/or mobile home of an employee except in compliance with the provisions of this act." The above-quoted statutes indicate in clear and unambiguous language that the payments provided for and enumerated therein are exclusive. Title 74 O.S. 500.53 [74-500.53] (1977) includes payment for the following services: "1. (a) The actual line-haul cost of moving ten thousand (10,000) pounds of the employee's household goods, said cost to include the packing, loading and unloading of the goods, respectively, or (b) Movement of one mobile home and its contents, regardless of the number of pieces into which it disassembles for transport, provided it is the principal residence of the employee; provided further, that said movement shall not exceed the equivalent cost of moving ten thousand (10,000) pounds of household goods the equivalent distance; "2. Special servicing of appliances at the origin and destination of the move; and "3. The insuring of the employee's household goods and/or mobile home, in the amount of One Dollar ($1.00) per pound, not to exceed Ten Thousand Dollars ($10,000.00)." A relocation allowance is not provided for, nor can it be implied from this language; the legislative intent is clear. It is, therefore, the opinion of the Attorney General that both your questions be answered in the affirmative. Title 74 O.S. 500.51 [74-500.51] et seq. (1977) does apply to the Department of Wildlife Conservation, and its terms mandate the total compensation a relocated employee may receive as expenses for moving. Since a relocation allowance of any amount is not provided for, and the Act is exclusive, any payment in addition to that provided for by the Act would be unauthorized. It is further the opinion of the Attorney General that to the extent that this opinion overrules statements made with regard to 74 O.S. 828.2 [74-828.2] (1977) as recited in Attorney General Opinion No. 77-254, that such statements are hereby and herein superseded and 74 O.S. 828.2 [74-828.2] (1977) is not applicable to the Wildlife Conservation Department. Furthermore, the Wildlife Conservation Commission is prohibited by virtue of 29 O.S. 3-305 [29-3-305] (1976) from expending, for operations, fees collected from the sale of lifetime licenses, but may expend the interest derived from the investment of such fees for operations as recited in Attorney General Opinion No. 77-254. (AMALIJA J. HODGINS)